**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| JAIME TODD, *on her own behalf and on behalf of her minor child*, G.T., ANDREW TODD, *on his own behalf and on behalf of his minor child*, G.T., ALLEN MCCLURE, ANGEL MCCLURE, LOGAN MCCLURE, JACOB MCCLURE, KILLIAN MCCLURE, *collectively on behalf of themselves and all other similarly situated;*<br><br>Plaintiffs;<br><br>v.<br><br>ASHLEY FURNITURE INDUSTRIES, LLC, ASHLEY GLOBAL RETAIL, LLC, and RESIDENT HOME LLC,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CIVIL ACTION NO.**<br><hr><br>**COMPLAINT AND JURY DEMAND** |

## PLAINTIFFS' CLASS ACTION COMPLAINT

NOW COME Plaintiffs JAIME TODD, *on her own behalf and on behalf of her minor child*, G.T.; ANDREW TODD, *on his own behalf and on behalf of his minor child,* G.T.; ALLEN MCCLURE, ANGEL MCCLURE, LOGAN MCCLURE, JACOB MCCLURE, and KILLIAN MCCLURE, *collectively on behalf of themselves and all other similarly situated*; and for their Class Action Complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure, allege as follows:

## NATURE OF ACTION

1.      This is a consumer class action on behalf of all individuals in the United States who purchased and/or used mattresses containing fiberglass/glass fibers manufactured and/or distributed by Defendants Ashley Furniture Industries, LLC, Ashley Global Retail, LLC, and Resident Home, LLC (collectively "Ashley" or "Defendants") ("the Affected Mattresses"). Ashley is another example of a large company valuing its profits over the safety of its customers. All too often companies like Ashley continue to knowingly produce unsafe products until someone holds it accountable, usually through court intervention.

2.      Ashley is an American home furnishing manufacturer and retailer headquartered in Arcadia, Wisconsin. The furnishings Ashley manufactures and retails include mattresses that contain fiberglass/glass fibers.

3.      On or about March 6, 2024, Ashley acquired Resident Home LLC, a digital retailer and wholesaler of mattresses that contain fiberglass/glass fibers and are marketed under brands such as Nectar and DreamCloud.

4.      Every Affected Mattress must meet the Open Flame Resistance Standards set forth in 16 C.F.R. § 1633.

5.      To comply with federal regulations regarding flammability standards, the Affected Mattresses are incased in a fire-retardant sock or sleeve ("FR Sleeve") that contains continuous filament glass fibers. The FR Sleeve is then incased in a removable outer cover equipped with a zipper ("Outer Cover").

6.      The continuous glass fibers from the FR Sleeves break and then release into the surrounding environment by either migrating through the inexpensive, porous Outer Cover and/or release once the Outer Cover is removed by unzipping it. The breakdown and release of the glass

fibers, together with the impact of that breakdown and release on the effectiveness and safety of the Affected Mattresses, are referred to herein as the "Defects."

7.      Once in the environment, the Affected Mattresses' glass fibers injure humans and animals. These injuries include respiratory issues and skin and eye irritation.

8.      Once in the environment, the glass fibers easily disperse through the air and travel throughout a home via HVAC systems, vents, and doorways then contaminate anything in their path including clothes, towels, bedding, couches, carpet, tile flooring, drywall, electronics, toys, wood, and plastic.

9.      Once the glass fibers contaminate an object, it is virtually impossible to remove every fiber from the object which forces the owner to discard the contaminated item.

10.     Contamination from the glass fibers can also displace individuals from their homes until costly professional remediation takes place.

11.     Given Plaintiffs' and other individuals' experiences with the Affected Mattresses, which will be described below, combined with Ashley's nationwide footprint, Plaintiffs bring this action on behalf of the following classes: (1) a proposed nationwide class of consumers who purchased the Affected Mattresses;  (2) a proposed nationwide class of adults injured by glass fibers from the Affected Mattresses; (3) a proposed nationwide class of minors injured by glass fibers from the Affected Mattresses; (4) a proposed nationwide class of individuals who suffered personal property damage by glass fibers from the Affected Mattresses; and (5) a proposed nationwide class of individuals who suffered real estate property damage by glass fibers from the Affected Mattresses. The classes and their members are sometimes referred to herein collectively as the "Class" or "Classes."

## PARTIES

12.     Plaintiffs Jamie and Andrew Todd are adult citizens, G.T. is a minor, and all are residents of Robertsville, Missouri.

13.     Plaintiffs Allen McClure, Angel McClure, Logan McClure, Jacob McClure, and Killian McClure are all residents of Princeton, West Virginia.

14.     Ashley Furniture Industries, LLC, is a Wisconsin limited liability company with its principal place of business located in Arcadia, Wisconsin.

15.     Ashley Global Retail, LLC, is a Delaware limited liability company that upon information and belief is under the dominion and control of Ashley Furniture Industries, LLC, and therefore based in Arcadia, Wisconsin.

16.     Resident Home, LLC, is a Delaware limited liability company that upon information and belief has its principal place of business in Arcadia, Wisconsin, after its purchase by Ashley Furniture Industries, LLC.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000.00, exclusive of interests and costs. This Court also has subject matter jurisdiction to decide claims brought under 16 C.F.R. § 1633 (the Federal Flammability Standard for Mattresses and Mattress Pads), and 15 U.S.C. § 2073 (Additional Enforcement of Consumer Product Safety Rules) by virtue of 28 U.S.C. § 1332(a)-(d), 28 U.S.C. § 1331, and has supplemental jurisdiction over the remaining claims.

18.     This Court has personal jurisdiction over Defendants because they are incorporated in Wisconsin and/or it maintains corporate headquarters in Wisconsin and/or have substantial contacts within Wisconsin.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

**A. The Todd Family**

20.     On or around February 20, 2021, Plaintiffs Jamie and Andrew Todd purchased a 14 Inch Ashley Hybrid King Mattress ("Mattress") from HomeXpressions, which is a retail store located at 9901 Watson Road, St. Louis, Missouri 63126.

21.     Plaintiffs' Mattress was from the vendor "Ashley" and branded as an "Ashley Sleep" mattress with the SKU M62941.

22.     On or around August 9, 2021, Plaintiffs removed the Mattresses' Outer Cover by unzipping it to clean it. There was no warning label attached to the Mattress instructing the user not to remove the Outer Cover. There was no label attached to the Mattress warning the user that if the Outer Cover were unzipped, glass fibers would release into the environment causing personal injuries and/or property damage.

23.     After removing the Mattresses' Outer Cover, Plaintiffs washed the Outer Cover in their personal use washing machine located in their home.

24.     Over the next few days, Plaintiffs began experiencing extreme skin irritation and respiratory problems. Plaintiffs also discovered that glass fibers from the Mattress had contaminated their home and personal belongings.

25.     On August 12, 2021, a professional cleaning and restoration company evaluated Plaintiffs' home and discovered widespread glass fiber contamination as a result of the Mattress releasing said fibers.

26.     As a result of the glass fiber contamination, Plaintiffs have suffered personal injuries, pain and suffering, real estate damage, personal property damage, and loss of home.

**B. The McClure Family**

27.     In or around April 2020, Plaintiffs Allen and Angel McClure purchased a Nectar XL Twin Mattress from nectarsleep.com.

28.     Ashley now owns the Nectar brand.

29.     In or around April 2021, Plaintiffs removed the Mattresses' Outer Cover by unzipping it to clean it. There was no warning label attached to the Mattress instructing the user not to remove the Outer Cover. There was no label attached to the Mattress warning the user that if the Outer Cover were unzipped, glass fibers would release into the environment causing personal injuries and/or property damage.

30.     After removing the Mattresses' Outer Cover, Plaintiffs washed the Outer Cover in their personal use washing machine located in their home.

31.     Over the next few days, Plaintiffs began experiencing extreme skin irritation and respiratory problems. Plaintiffs also discovered that glass fibers from the Mattress had contaminated their home and personal belongings.

32.     On or around May 2021, a professional cleaning and restoration company evaluated Plaintiffs' home and discovered widespread glass fiber contamination as a result of the Mattress releasing said fibers.

33.     As a result of the glass fiber contamination, Plaintiffs have suffered personal injuries, pain and suffering, real estate damage, personal property damage, and loss of home.

**C. Personal Injuries**

34.     The glass fibers from the Affected Mattresses caused Plaintiffs and their families to experience extreme pain and suffering. Some of Plaintiffs' and their families' injuries include dermatitis; rashes; soreness to nose, throat, and eyes; respiratory issues; breathing problems;

embedded fibers; and stomach irritation. Currently, the severity of Plaintiffs' and their families' injuries is unknown because it is likely each individual inhaled significant amounts of glass fibers.

**D. Property Damage**

35.    The glass fibers from the Affected Mattresses caused significant and potentially irreversible damage to the Plaintiffs' homes and personal property. These glass fibers contaminated Plaintiffs' homes including Plaintiffs' HVAC systems, washing machines, dryers, clothes, towels, bedding, couches, carpet, tile flooring, drywall, electronics, bedding, miscellaneous furniture, and vehicles.

**E. Ashley Knew or Should Have Known of the Defects as Early as 2018**

36.    On September 23, 2018, a verified Amazon purchaser posted a 1-star review on Ashley's Amazon page stating:

> Do not buy, the bed in made out of fiberglass, it's horribly hard to get rid of the shard.[1]

37.    On January 22, 2019, a verified Amazon purchaser posted a 1-star review on Ashley's Amazon page stating:

> Shards of fiberglass WILL GET EVERYWHERE. I took the cover of the mattress off to wash, and while doing so shards of fiberglass from the protective cover got all over my room. I had to throw away many pieces of clothing, sheets and my comforter because it the fiberglass was so badly intertwined in the fabric. I'm so disappointed.[2]

38.    On December 6, 2019, a verified Amazon purchaser posted a 1-star review on Ashley's Amazon page stating:

> Took off the cover to wash it but didn't put it back on right away; well under that cover the mattress is full of fiberglass that got stuck to all of my families clothes

---

[1] https://www.amazon.com/product-reviews/B0777K9RGX/ref=cm_cr_arp_d_viewopt_kywd?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews&pageNumber=1&filterByKeyword=shard&sortBy=helpful#reviews-filter-bar (review by verified purchaser Bear dated September 23, 2018, last visited July 1, 2024).

[2] *Id.* (emphasis added in original).

and blankets. Horrible experience specially seeing my two year old being itchy with a red rash all over his body!!![3]

39.  On December 4, 2020, a verified Amazon purchaser posted a 1-star review on Ashley's

Amazon page stating:

> Please stay away from this mattress, it is full of fiberglass, the price seems very appealing but please, don't make the mistake that I did, I bought it and now I have fiberglass everywhere, I had to throw it away but the damage was done, cleaning fiberglass is a nightmare and very expensive, on top of that, I have to buy me another mattress. This is the first time that I post a review and only because people need to know what they are buying, please be aware, if you buy this, you'll be sleeping on fiberglass.[4]

40.  On December 19, 2020, a verified Amazon purchaser posted a 1-star review on Ashley's

Amazon page stating:

> DO NOT BUY THIS. I never write reviews but feel morally obligated with this item. The mattress has undisclosed fiberglass in the lining that has a zipper indicating it's ok to remove. When you remove it you contaminate your entire living space with fiberglass. We caught it early and still lost the mattress, bedding, clothing, rugs, towels, and washer/dryer. So far. Nothing is worth the hell this can put you through. Obviously you can avoid taking off the cover but knowing that a small tear or wearing down of the cover can destroy so much is NOT worth it. Search for a fiberglass free mattress and buy it. Not this.[5]

41.  On December 27, 2020, a verified Amazon purchaser posted a 1-star review on Ashley's

Amazon page stating:

> fiberglass everywhere and I'm so upset about it :( I had this mattress for a year and just noticed that once I took the mattress cover off, there are tons of fiberglass particles throughout the bed. My clothes are covered in fiberglass and I don't know what to do about it. So disappointed :/[6]

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] Amazon Customer Reviews, AMAZON: CUSTOMER REVIEWS: SIGNATURE DESIGN BY ASHLEY (2018), https://www.amazon.com/product-reviews/B0777K9RGX/ref=cm_cr_arp_d_viewopt_kywd?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews&pageNumber=1&filterByKeyword=fiberglass#reviews-filter-bar (last visited Sep 3, 2021).

42. On June 23, 2021, a verified Amazon purchaser posted a 1-star review on Ashley's

Amazon page stating:

> The mattress arrived today and I was very excited since it looked really nice and firm. As it was expanding after couple of hours, I wanted to check the corners to see why it wasn't expanding then I saw shiny glittery things on top of the mattress. I started to run my hand on the cover to understand what those were and my hands got shiny. I thought it couldn't be fiberglass then my hand started to burn continuously for the next hour then I took a closer look to my hand and it was shining and little little pieces of fiberglass was stuck in my hand all over and my fingers. I needed to use a tweezer to pluck them. Ugh. Then I lifted the mattress and looked underneath and I saw little pieces of fiberglass coming out of the protective mattress!!! I'm not sure how this mattress have 35K positive reviews, seriously![7]

43. On July 17, 2021, a verified Amazon purchaser posted a 1-star review on Ashley's Amazon

page stating:

> I took the cover off to wash it and now my room, carpet, all my clothes, washer/dryer everything is covered in tiny glasses. Disappointing and very unfair. They should warn that opening the 100% polyester mattress cover will expose the lower layer cover with fiberglass and cause me to lose bags of clothing, trash my carpet, comforters, and washer/dryer, and have sleepless nights/constant irritated itchy skin. I don't know what's it doing to me and my family's lungs. Why should I pay for their nondisclosure/unfair advertisement with my health and money?[8]

44. On August 14, 2021, a verified Amazon purchaser posted a 1-star review on Ashley's

Amazon page stating:

> Bought 2.5 years ago. Have been having allergy symptoms for a few months. Got to the point I couldn't go in my room. After trying many other options for many other possibilities we decided to remove the cover to wash it and found fiberglass. There is a lawsuit happening right now. They should not be selling this. It's not just this brand. All foam mattresses.[9]

## DAMAGES

---

[7] *Id.* (emphasis added in original).
[8] *Id.*
[9] *Id.*

45.     The Defects and Ashley's conduct, misrepresentation, and concealment of the Defects caused damage to Plaintiffs and the Class in at least three (3) ways, as alleged in detail below. First, members of the Class would not have purchased the Affected Mattresses at all or would have paid less for them had the Defects been disclosed to them. Each of these injuries has already occurred. None of the injuries requires any Class members' mattresses to release glass fibers. Second, members of the Class were personally injured by the glass fibers contained within the Affected Mattresses. And third, members of the Class suffered property and/or real estate damage from the glass fibers contained within the Affected Mattresses. Members who suffered property and/or real estate damage from glass fibers contained within the Affected Mattresses seek the costs of remediation and/or costs to replace contaminated property.

## CLASS ACTION ALLEGATIONS

46.     The Classes' claims all derive directly from a single course of conduct by Ashley. Ashley has engaged in uniform conduct toward the Class members. Ashley did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions among individual Class members. The operative facts on these subjects are the same for all Class members. The same legal standards govern each Claim for Relief asserted by the respective Classes. Additionally, the state law claims share the same legal standards and elements of proof across states, thus facilitating the certification of a National Class.

47.     Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

## A. The Nationwide Consumer Class

48.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behaves and on behalf of a **nationwide class** defined as follows:

> All persons who purchased an Affected Mattress in the United States, which was manufactured and/or sold by Ashley and contained glass fibers.

## B. The Nationwide Adult Personal Injury Class

49.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behaves and on behalf of a **nationwide class** defined as follows:

> All adults in the United States injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Ashley and contained glass fibers.

## C. The Nationwide Minor Personal Injury Class

50.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behaves and on behalf of a **nationwide class** defined as follows:

> All minors in the United States injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Ashley and contained glass fibers.

## D. The Nationwide Personal Property Damage Class

51.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behaves and on behalf of a **nationwide class** defined as follows:

> All persons in the United States who suffered personal property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Ashley and contained glass fibers.

## E. The Nationwide Real Estate Property Damage Class

52.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behaves and on behalf of a **nationwide class** defined as follows:

> All persons in the United States who suffered real estate property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Ashley and contained glass fibers.

53.     Excluded from the Classes are Ashley; any affiliate, parent, or subsidiary of Ashley; any entity in which Ashley has a controlling interest; any officer, director, or employee of Ashley;  any successor or assign of Ashley; counsel for the Plaintiffs or anyone employed by counsel for Plaintiffs in this action and their immediate families; any Judge to whom this case is assigned and his or her immediate family and staff.

54.     This action has been brought and may properly be maintained on behalf of Classes proposed above under Federal Rule of Civil Procedure Rule 23.

55.     **Numerosity.** This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1) based on the almost 700 Ashley retail stores located in the United States and the 36,000 plus Amazon Reviews concerning Ashley's Signature Design by Ashley Chime Mattress, which is only one model of the Affected Mattresses**.** There are thousands of Affected Mattresses nationwide. Individual joinder of all Class members is impracticable.

56.     Each of the Classes is ascertainable because its members can be readily identified using sales records, production records, and other information kept by Ashley or third parties in the usual course of business and within their custody or control. Plaintiffs anticipate providing appropriate notice to each certified Class in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

57.    **Existence of common questions.** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members, as is required by Fed. R. Civ. P. 23(a)(2). These common questions include:

a.  Whether the Affected Mattresses are "substantial product hazards" as defined in 15 U.S.C. § 2064.

b.  Whether Ashley violated 15 U.S.C. § 2064.

c.  Whether under 15 U.S.C. § 2064 this Court may issue a preliminary injunction restraining Ashley from distributing in commerce within the United States mattresses containing glass fibers pending the completion of this action.

d.  Whether the Affected Mattresses comply with 16 C.F.R. § 1633 over the life of the mattress.

e.  Whether the Affected Mattresses comply with 16 C.F.R. § 1633 if the continuous glass fibers break.

f.  Whether the Outer Cover on the Affected Mattresses constitutes a defect.

g.  Whether the Outer Cover on the Affected Mattresses constitutes a safety-related defect.

h.  Whether the zipper on the Outer Cover of the Affected Mattresses constitutes a defect.

i.  Whether the zipper on the Outer Cover of the Affected Mattresses constitutes a safety-related defect.

j.  Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a defect in the mattress system.

k.  Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a safety-related defect in the mattress system.

l.  Whether the Affected Mattresses' attached tags are inadequate to sufficiently warn the user of associated dangers.

m.  Whether the Defects constitute material facts that consumers might consider in making their purchasing decisions.

n.  Whether Ashley fraudulently concealed these Defects.

o.  Whether Ashley fraudulently concealed other defects.

p.  Whether Ashley misrepresented that the Affected Mattresses were safe.

q.  Whether Ashley engaged in unfair, deceptive, unlawful, and/or fraudulent acts or practices in trade or commerce by failing to disclose the Defects.

r.  Whether Ashley violated consumer protection statutes, and if so, what remedies are available.

s.  Whether Ashley should be declared responsible for notifying all Class members of the Defects.

t.  Whether Ashley is liable under various theories of state liability.

u.  Whether Ashley is liable to the Class for damages and/or penalties because of its knowledge, conduct, action, or inaction.

v.  Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or preliminary and/ or permanent injunction.

w.  Whether Plaintiffs and the other Class members are entitled to relief under 15 U.S.C. § 2073.

x.  Whether Ashley violated 16 C.F.R. § 1633.6.

58.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs' Affected Mattress contained the same Defects found in all other Affected Mattresses.

59.    **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent and are capable and willing to participate in this litigation. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel. As such, they meet the requirements of Fed. R. Civ. P. 23(a)(4).

60.    **Declaratory and Injunctive Relief.** Federal Rule of Civil Procedure 23(b)(2): Ashley has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

61.    **Predominance and Superiority.** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The common questions listed in paragraph **57** are the central legal and factual issues in the litigation. The injuries suffered by each Class member, while meaningful on an individual basis, are not of such magnitude as to make the prosecution of individual actions against Ashley economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Defects, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system. By contrast, the class action device presents

far fewer management difficulties and provides the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

62.     In the alternative, the Class may be certified because:

        a.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Ashley; and/or

        b.     The prosecution of separate actions by individual Class members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

## CLAIMS FOR RELIEF

### COUNT ONE – ADDITIONAL ENFORCEMENT OF PRODUCT SAFETY RULES

63.     Plaintiffs reallege and incorporate by reference paragraphs 1-62 as though fully set forth herein.

64.     Plaintiffs bring this Count against Ashley individually and on behalf of members of the Classes.

65.     15 U.S.C. § 2073 allows any interested person to enforce a consumer product safety rule and to obtain appropriate injunctive relief.

66.     16 C.F.R. § 1633 is a consumer product safety rule that establishes "flammability requirements that all mattress sets must meet before sale or introduction into commerce.[10]

---

[10] 16 C.F.R. § 1633.1

67.    Under § 1633, Ashley has a duty to cease production and distribution in commerce of the Affected Mattresses if:

> Any test performed for quality assurance yields results which indicate that any mattress set of a production lot does not meet the criteria of § 1633(b), or if the manufacturer obtains tests results or other evidence that a component or material or construction/assembly process used could negatively affect the test performance of the mattress set as set forth in § 1633(b), the manufacturer shall cease production and distribution in commerce of such mattress sets until corrective action is taken.[11]

68.    As previously outlined, Ashley has received numerous customer complaints concerning its FR Sleeves purportedly releasing fiberglass.

69.    For purposes of § 1633.6, fiberglass purportedly releasing from Ashley's FR Sleeves could negatively affect the test performance of the Affected Mattresses set forth in § 1633.3(b).

70.    In violation of § 1633.6, Ashley continues to produce and distribute in commerce the Affected Mattresses after receiving significant evidence that the continuous glass fiber filaments contained within its Affected Mattresses' FR Sleeves were purportedly breaking.

71.    Plaintiffs gave the required notice under § 2073 before filing this action.

72.    Plaintiffs are interested persons for purposes of § 2073 because they seek to protect the public against unreasonable risks of injury associated with the Affected Mattresses.

73.    As such, pursuant to § 2073 and in order to protect the general public, Plaintiffs request the Court enjoin Ashley from distributing in commerce within the United States the Affected Mattresses until Ashley takes corrective action.

74.    Pursuant to § 2073, Plaintiffs also request the Court award Plaintiff the costs of this suit, including reasonably attorneys' fees, and reasonable expert witnesses' fees.

### COUNT TWO – STRICT LIABILITY (FAILURE TO WARN)

---

[11] 16 C.F.R. § 1633.6 (emphasis added).

75.     Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1-62 of the Complaint as if they were set forth fully herein. Plaintiffs bring this Count against Ashley individually and on behalf of members of the Classes, and under the common law of strict liability, as there are no material conflicts among various states' causes of action for strict liability as they apply to this case.

76.     Ashley engaged in the design, manufacturing, marketing, and/or sales of the Affected Mattresses and knew or should have known the Affected Mattresses could release glass fibers resulting in contamination of the surrounding environment, thereby causing injuries and property damage to Plaintiffs.

77.     Ashley knew or should have known of the adverse impacts exposure to its glass fibers would have on people and property.

78.     Ashley knew or should have known of the persistence and high mobility of glass fibers once released into an environment, and the foreseeable risk that their glass fiber-containing mattresses could discharge or release said fibers into an environment.

79.     Ashley failed to provide warnings or instructions sufficient to notify the users and/or public and/or Plaintiffs of the dangers inherent in the glass fiber-containing Affected Mattresses.

80.     Ashley failed to provide proper and adequate notice or instruction regarding the dangers of their Affected Mattresses to human health and property rendering the glass fiber-containing Affected Mattresses unreasonably dangerous for the purposes intended and promoted by Ashley.

81.     Ashley's duty to warn is and was a non-delegable duty.

82.     Ashley also intentionally, recklessly, and without regard for human life and property covered up, suppressed, withheld, obfuscated, minimized, and otherwise misrepresented the facts

Ashley had with regard to their glass fiber-containing mattresses as such relate to the persistence and high mobility of glass fibers in an environment.

83.    This failure to warn or adequately instruct regarding the dangers associated with use of the Affected Mattresses directly and proximately caused harm and damages to Plaintiffs.

84.    By causing glass fiber contamination and the resulting impact to Plaintiffs' health and property, Ashley is strictly liable.

85.    The failure to warn and deceptive conduct of Ashley, as to the public, and retailers of the Affected Mattresses, constitutes reprehensible, outrageous, and fraudulent conduct, justifying an award of punitive damages as against Ashley for failure to warn.

## COUNT THREE – STRICT LIABILITY (DESIGN DEFECT)

86.    Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1-62 of this Complaint as if they were set forth fully herein. Plaintiffs bring this Count against Ashley individually and on behalf of members of the Classes, and under the common law of strict liability, as there are no material conflicts among various states' causes of action for strict liability as they apply to this case.

87.    Ashley, herein, at all times relevant, was in the business of the design, manufacture, sale, and distribution of glass fiber-containing mattresses, and/or the foregoing use of which created a risk of exposure to glass fibers to the public as part of the foreseeable use of the Affected Mattresses.

88.    Ashley designed, manufactured, marketed, and/or sold defective products that were unreasonably dangerous for their intended use. Ashley either knew of the dangers contained in the Affected Mattresses and chose to ignore such dangers or should have known such dangers existed.

89.    When Ashley placed their glass fiber-containing mattresses into the stream of commerce, the mattresses were defective, unreasonably dangerous, and not fit, suitable, or safe for the intended, foreseeable, and ordinary uses.

90.    The three (3) Design Defects are: (1) the FR Sleeve's design allows the continuous filament fibers to break. Once the continuous fibers of the FR Sleeve break, the FR Sleeves lose their fire-retardant capabilities required by 16 C.F.R. § 1633. Also, the broken fibers easily disperse from the FR Sleeves into the surrounding environment causing personal injuries and/or property damage; (2) the substandard, porous Outer Cover allows the broken fibers to migrate through the Outer Cover and release into the surrounding environment causing personal injuries and/or property damage; and, (3) the Outer Cover is equipped with a zipper inviting the user to remove it, allowing the broken fibers to more easily release into the surrounding environment causing personal injuries and/or property damage.

91.    After Ashley designed, manufactured, sold, and distributed the Affected Mattresses, they reached consumers and users without substantial change to the condition and nature of the products. Ashley crafted the Affected Mattresses pursuant to their own formulas, research, design specifications, and testing.

92.    Ashley, with knowledge of the risks associated with glass fibers, failed to use reasonable care in the design of the Affected Mattresses.

93.    The Defects in the Affected Mattresses existed at the time said mattresses left Ashley's control and were known to Ashley.

94.    Reasonable safer alternatives exist and were available to Ashley at all relevant times. Thus, the risks of the Affected Mattresses outweighed the benefits.

95.     By causing glass fiber contamination and the resulting impact to Plaintiffs' health and/or property, Ashley is strictly liable.

96.     The Defects in the Affected Mattresses proximately caused and have directly resulted in the damages of which Plaintiffs complain.

### COUNT FOUR – NEGLIGENCE

97.     Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1-62 of this Complaint as if they were set forth fully herein. Plaintiffs bring this Count against Ashley individually and on behalf of members of the Classes, and under the common law of negligence, as there are no material conflicts among various states' causes of action for negligence as they apply to this case.

98.     Ashley had a duty to exercise due or reasonable care in the manufacturing, distribution, and use of its glass fiber-containing mattresses to avoid harm to those who would be foreseeably injured by glass fiber contamination.

99.     Ashley knew or should have known that there was a serious risk that the Affected Mattresses could release or discharge glass fibers into an environment that would lead to contamination likely causing injures and/or property damage.

100.    By failing to exercise due care in the design, manufacturing, marketing, testing, and promotion of its glass fiber-containing mattresses, Ashley breached its duty to avoid harm to Plaintiffs.

101.    Ashley failed to share, publish, or otherwise expose its internal testing and knowledge of the adverse effects of glass fiber exposure to humans and property. Ashley also intentionally, recklessly, and without regard for human safety and property, suppressed, obfuscated, minimized, and otherwise misrepresented the facts Ashley had with regard to its glass fiber-containing

mattresses and the high mobility glass fibers pose once released into an environment. Ashley not only negligently failed to inform the public and Plaintiffs of same, but, at various times, failed to warn retailers of the Affected Mattresses. The failure to warn and deceptive conduct of Ashley, as to the public, Plaintiffs, and retailers, constitutes reprehensible, outrageous, and fraudulent conduct, justifying an award of punitive damages against Ashley for failure to warn.

102.    By negligently causing glass fiber contamination and the resulting impact to Plaintiffs' health and/or property, Ashley is liable to Plaintiffs.

103.    As a result of Ashley's negligence, Plaintiffs have incurred, and will continue to incur, investigation, cleanup, remediation, abatement, and removal costs and damages related to glass fiber contamination.

104.    Ashley's acts were willful, wanton, or reckless and conducted with a reckless indifference to Plaintiffs' rights.

105.    As a direct and proximate result of Ashley's actions and omissions, Plaintiffs have suffered and continue to suffer damages.

**COUNT FIVE — VIOLATION OF STATE CONSUMER PROTECTION STATUTES**

106.    Plaintiffs reallege and incorporate by reference paragraphs 1-62 as though fully set forth herein. Plaintiffs bring this Count against Ashley individually and on behalf of members of the Classes.

107.    Ashley engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the following statutes when it misled consumers regarding the safety risks associated with use of their Affected Mattresses:

    a.    Ala. Code § 8-19-1 *et seq.*;

    b.    Alaska Stat. § 45.50.471 *et seq.*;

    c.    Ariz. Rev. Stat. Ann. § 44-1521 *et seq.*;

d. Ark. Code Ann. § 4-88-101 *et seq.*;

e. Cal. Civil Code § 1750 *et seq.* and Cal. Bus. & Prof. Code § 17200 *et seq.*;

f. Colo. Rev. Stat. § 6-1-101 *et seq.*;

g. Conn. Gen. Stat. Ann. § 42-110a *et seq.*;

h. Del. Code Ann. tit. 6 § 2511 *et seq.*;

i. D.C. Code Ann. § 28-3901 *et seq.*;

j. Fla. Stat. Ann. § 501.201 *et seq.*;

k. Ga. Code Ann. § 10-1-370 *et seq.*;

l. Haw. Rev. Stat. § 480-1 *et seq.* and 481A-1 *et seq.*;

m. Idaho Code § 48-601 *et seq.*;

n. 815 Ill. Comp. Stat. 505/1 *et seq.*;

o. Ind. Code Ann. § 24-5-0.5-1 *et seq.*;

p. Iowa Code § 714.16 *et seq.*;

q. Kan. Stat. Ann. § 50-623 *et seq.*;

r. Ky. Rev. Stat. Ann. § 367.170 *et seq.*;

s. La. Rev. Stat. Ann. § 51:1401 *et seq.*;

t. Me. Rev. Stat. Ann. tit. 5, § 205-A *et seq.*;

u. Md. Code Ann., Com. Law § 13-301 *et seq.*;

v. Mass. Gen. Laws ch. 93A, § 1 *et seq.*;

w. Mich. Comp. Laws Ann. § 445.901 *et seq.*;

x. Minn. Stat. §§ 325D.09 *et seq.*, 325D.43 *et seq.*, 325F.67, 325F.68 *et seq.*, and § 8.31;

y. Miss. Code Ann. § 75-24-5 *et seq.*;

z. Mo. Ann. Stat. § 407.010 *et seq.*;

aa. Mont. Code Aim. § 30-14-101 *et seq.*;

bb. Neb. Rev. Stat. § 87-301 *et seq.*;

cc.     Nev. Rev. Stat. Ann. §§ 598.0903 *et seq.* and 41.600;

dd.     N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*;

ee.     N.J. Stat. Ann. § 56:8-1 *et seq.*;

ff.     N.M. Stat. Ann. § 57-12-1 *et seq.*;

gg.     N.Y. Gen. Bus. Law §§ 349 *et seq.*, 350, 350-a and 350-e *et seq.*;

hh.     N.C. Gen. Stat. § 75-1 *et seq.*;

ii.     N.D. Cent. Code §§ 51-12-01 *et seq.* and 51-15-01 *et seq.*;

jj.     Ohio Rev. Code Ann. § 1345.01 *et seq.*;

kk.     Okla. Stat. Ann. tit. 15, § 751 *et seq.*;

ll.     Or. Rev. Stat. § 646.605 *et seq.*;

mm.     73 Pa. Cons. Stat. § 201-1 *et seq.*;

nn.     R.I. Gen. Laws § 6-13.1-1 *et seq.*;

oo.     S.C. Code Ann. § 39-5-10 *et seq.*;

pp.     S.D. Codified Laws § 37-24-1 *et seq.*;

qq.     Tenn. Code Ann. § 47-18-101 *et seq.*;

rr.     Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*;

ss.     Utah Code Ann. § 13-11-1 *et Seq.*;

tt.     Vt. Stat. Ann. tit. 9, § 2451 *et seq.*;

uu.     Va. Code Ann. § 59.1-196 *et seq.*;

vv.     Wash. Rev. Code Ann. § 19.86.010 *et seq.*;

ww.     W.Va. Code § 46A-6-101 *et seq.*;

xx.     Wis. Stat. Ann. §§ 100.18 and 421.101 *et seq.*;

yy.     Wyo. Stat. Ann. § 40-12-101 *et seq.*;

zz.     American Samoa Code Ann. § 27.0401 *et seq.*;

aaa.     4 CMC § 5101 *et seq.*;

bbb.   5 Guam Code Ann. § 32102 *et seq.*; and

ccc.   12A Virgin Is. Code § 301 *et seq.*

108.   As a direct result of Ashley's deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs and the other Class members suffered and will continue to suffer economic loss and other compensable injuries.

109.   Ashley's' deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly:

a.   Representing that goods have characteristics, ingredients, uses, or benefits that they do not have;

b.   Representing that goods are of a particular standard, quality, or grade if they are of another; and

c.   Advertising goods with the intent not to sell them as advertised.

110.   Ashley's actions and failure to act—including their false and misleading representations and omissions of material facts regarding the safety and potential risks of Affected Mattresses, as described above—constitute acts, uses or employment by Ashley of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiffs and the other Class members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Ashley's' merchandise, in violation of the consumer protection statutes listed above.

111.   Ashley's unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from a cessation of these unlawful actions through this litigation.

112.   By reason of the unlawful acts engaged in by Ashley, Plaintiffs and the other Class members have suffered ascertainable loss and damages.

113.    As a direct and proximate result of Plaintiffs' and the other Class members' reasonably anticipated use of Ashley's Affected Mattresses as manufactured, designed, sold, supplied, marketed, and/or introduced into the stream of commerce by Ashley, Plaintiffs and the other Class members suffered serious injury, harm, damages, economic and non-economic loss, and will continue to suffer such harm, damages and losses into the future.

114.    Ashley's conduct with respect to their design and sale of their Affected Mattresses to Plaintiffs and the other Class members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Ashley's conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

115.    Due to the above assertions, Ashley is liable to Plaintiffs and the other Class members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

116.    Plaintiffs did not need to send (additional) notice to Ashley of their violations of the above-referenced statutes because Ashley was already on notice of the defects alleged herein and of Ashley's related violations. Ashley received such notice in pre-suit mediation with Plaintiffs for the same conduct and through other means.

117.    Plaintiffs and the other Class members would not have purchased the affected mattresses or alternatively they would have paid less for them, had the truth about the toxic nature of Ashley's products been disclosed. Plaintiffs, on behalf of themselves and the other Class members, seek to recover the actual damages they have suffered.

### COUNT SIX — BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/FITNESS FOR PARTICULAR USE

118.    Plaintiffs reallege and incorporate by reference paragraphs 1-62 as though fully set forth herein. Plaintiffs bring this Count against Ashley individually and on behalf of members of the Classes, as there are no material conflicts among various states' causes of action for breach of implied warranty of merchantability/fitness for a particular purpose as they apply to this case.

119.    Ashley is in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling mattresses.

120.    Prior to the time that the Plaintiffs purchased and/or used Ashley's mattresses, Ashley knew of the uses for which their mattresses were intended and impliedly warranted to Plaintiffs that their mattress products were of merchantable quality and safe and fit for such intended and ordinary uses. Ashley also impliedly warranted to Plaintiffs that their Affected Mattresses were of a certain quality.

121.    Ashley's warranties included but are not limited to the warranties that their mattresses are safe and comfortable.

122.    Ashley breached their implied warranties of their Affected Mattresses sold to Plaintiffs because they were not fit for their ordinary purposes and intended and reasonably foreseeable uses, nor were their Affected Mattresses minimally safe for their expected purpose.

123.    Ashley's Affected Mattresses were neither safe for their intended use nor of merchantable quality, as warranted by Ashley, because their Affected Mattresses have dangerous propensities when used as intended and cause injuries to users, including Plaintiffs, and property damage to property owners, including Plaintiffs.

124.    Similarly, Ashley's Affected Mattresses were unfit for their particular purpose—safe use as a bed. Ashley's Affected Mattresses could not and do not safely function as beds, and could not after leaving Ashley's control.

125.    Ashley's Affected Mattresses were unfit for their ordinary use, were not of merchantable quality, did not conform to the representations made by Ashley, and/or were unfit for their particular purpose when they left Ashley's control.

126.    Ashley's Affected Mattresses are consumer products, Plaintiffs are consumers, Ashley are suppliers and/or warrantors of the defective Affected Mattresses, and Ashley breached their implied warranties as described above.

127.    The breach of warranties was a substantial factor in bringing about Plaintiffs' injuries.

128.    As a direct and proximate result of Plaintiffs' reasonably anticipated use of Ashley's Affected Mattresses as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Ashley, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss, and will continue to suffer such harm, damages and losses in the future.

129.    Ashley's conduct with respect to their design and sale of Affected Mattresses to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

130.    Plaintiffs did not need to send (additional) notice to Ashley of their breaches of warranty because Ashley was already on notice of the defects alleged herein and Ashley's related violations.

**COUNT SEVEN — BREACH OF EXPRESS WARRANTY**

131.    Plaintiffs reallege and incorporate by reference paragraphs 1-62 as though fully set forth herein. Plaintiffs bring this Count against Ashley individually and on behalf of members of the Classes, as there are no material conflicts among various states' causes of action for breach of express warranty as they apply to this case.

132.    Ashley is in the business of manufacturing, supplying, marketing, advertising, warranting, and/or selling Affected Mattresses.

133.    Ashley expressly represented and warranted to Plaintiffs, through statements made by Ashley or their authorized agents in direct-to-consumer marketing, advertisements, and labels, that their Affected Mattresses were safe and effective for their reasonably expected and intended use— as a bed.

134.    Ashley's warranties included but are not limited to the warranties that their Affected Mattresses are safe and comfortable.

135.    These and other (mis)representations made directly by the manufacturer or seller to consumers and end users of Ashley's Affected Mattresses constitute express warranties and became part of the basis of the bargain between the parties and created a collective express warranty that their Affected Mattresses would conform to Ashley's affirmations and promises.

136.    Ashley breached their express warranties about their Affected Mattresses and their qualities because Ashley's statements about their Affected Mattresses' safety were false and their Affected Mattresses did not conform to those affirmations and promises. Ashley's Affected Mattresses were not safe, but rather exposed Plaintiffs and other consumers to unreasonable risks of adverse health effects and property damage.

137.    The breach of the warranties was a substantial factor in bringing about Plaintiffs' injuries.

138.    Ashley's failure to tender their Affected Mattresses to Plaintiffs free of defects constitutes a breach of the written warranties covering their Affected Mattresses. Ashley is on notice of their defective Affected Mattresses, yet Ashley has failed to cure the damage resulting therefrom within a reasonable time.

139.    As a direct and proximate result of Plaintiffs' reasonably anticipated use of Ashley's Affected Mattresses as manufactured, designed, sold, supplied, marketed and/or introduced into

the stream of commerce by Ashley, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss, and will continue to suffer such harm, damages, and losses in the future.

140.    Ashley's conduct with respect to their design and sale of their Affected Mattresses to Plaintiffs and the public was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

## COUNT EIGHT — UNJUST ENRICHMENT

141.    Plaintiffs reallege and incorporate by reference paragraphs 1-62 as though fully set forth herein. Plaintiffs bring this Count against Ashley individually and on behalf of members of the Classes.

142.    As a result of Ashley's wrongful and deceptive conduct, Ashley knowingly and voluntarily accepted and retained wrongful remunerations in the form of money paid by Plaintiffs and the other Class members when they purchased the Affected Mattresses.

143.    In so doing, Ashley acted with conscious disregard for the rights of Plaintiffs and the other Class members.

144.    As an intended and expected result of Ashley's conscious wrongdoing, as set forth in this Complaint, Ashley has profited and benefited from payments Plaintiffs and the other Class members made for their Affected Mattresses.

145.    Ashley's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

146.    At the time their payments were made, Plaintiffs and the other Class members expected that Ashley's Affected Mattresses were safe and effective in the ways Ashley had represented and could safely be used for the purposes Ashley advertised their Affected Mattresses. In exchange for

their payments, Plaintiffs and the other Class members believed they were receiving a safe product that did not involve the risk of serious adverse health effects.

147.    Ashley has voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiffs and the other Class members paid for Ashley's Affected Mattresses when they otherwise would not have done so. The failure of Ashley to provide Plaintiffs and the other Class members with the remuneration expected enriched Ashley unjustly.

148.    Under the common law doctrine of unjust enrichment, it is inequitable for Ashley to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Affected Mattresses to Plaintiffs and the other Class members.

149.    Ashley's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Ashley to earn and retain revenues, profits, and benefits from their Affected Mattresses while Plaintiffs and the other Class member suffered and continue to suffer serious illnesses, including but not limited to, dermatitis; rashes; soreness to nose, throat, and eyes; respiratory issues; breathing problems; embedded fibers; and stomach irritation.

150.    Plaintiffs and the other Class members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

151.    Plaintiffs, on behalf of themselves and the other Class members, seek restitution and disgorgement of Ashley's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Ashley's unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Classes as defined herein, respectfully request that this Court enter a judgment against Ashley and in favor of Plaintiffs and the Classes, and grant the following relief:

a. Determine that this action may be maintained and certified as a class action on a nationwide or, alternatively, a statewide basis under Rule 23(b)(1), 23(b)(2) and/or 23(b)(3); or alternatively, certify all questions, issues and claims that are appropriately certified under 23(c)(4); and that it designate and appoint Plaintiffs as Class Representatives, and appoint Class Counsel under Rule 23(g);

b. Enter judgment finding Ashley liable for all costs and damages incurred by Plaintiffs, including but not limited to prior, interim, and future capital as well as operation and maintenance costs related to glass fiber contamination; including the reasonable costs of investigations and remediation, and losses resulting from glass fiber contamination;

c. A declaration that the Affected Mattresses are defective as described herein;

d. Enter judgment finding Ashley liable for punitive damages;

e. Enter judgment finding Ashley liable for consequential damages;

f. Enter judgment requiring, via injunction, Ashley stop manufacturing and/or selling the Affected Mattresses in the United States;

g. Award Plaintiffs costs and reasonable attorney fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law;

h. A declaration that these defects are safety-related;

i. A declaration that Ashley be financially responsible for notifying all Class members of the Defects present in the Affected Mattresses;

j.  An order requiring Ashley to desist from further deceptive distribution and sales practices with respect to the Affected Mattresses;

k.  An order requiring Ashley to pay Plaintiffs statutory damages under the various state statutes pled above;

l.  An award of punitive damages and/or treble the amount of damages;

m.  Award Plaintiffs and Class members restitution and/or disgorgement of Ashley's ill-gotten gains for the conduct described in this Complaint;

n.  An order enjoining Ashley from making any further false or misleading statements to Plaintiffs and members of the Class and or Subclasses, and other appropriate relief regarding the marketing of this product;

o.  Award Plaintiffs and Class members pre-judgment and post-judgment interest;

p.  Leave to amend this Complaint to conform to the evidence produced at trial; and

q.  Award Plaintiffs and Class members such other relief as the case may require; or as determined to be just, equitable, and proper by this Court.

Plaintiffs hereby demand a jury trial for all of the claims so triable.

Dated: August 30, 2024                          Respectfully submitted,

_/s/Daniel B. Snyder_
Daniel B. Snyder, Wis # 1037585
Gregory A. Cade
Kevin B. McKie
Gary Anderson
ENVIRONMENTAL
LITIGATION GROUP, P.C.
2160 Highland Ave. S.
Birmingham, AL 35205
T: (205) 328-9200

F: (205) 328-9456
GregC@elglaw.com
kmckie@elglaw.com
Gary@elglaw.com

Christopher Cueto, IL #6192248
James E. Radcliffe, IL #6330315
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
ccueto@cuetolaw.com
jradcliffe@cuetolaw.com

Lloyd M. Cueto, IL #6292629
Law Office of Lloyd M. Cueto, P.C.
7110 West Main Street
Belleville, IL 62223
cuetolm@cuetolaw.com

***Attorneys for Plaintiffs***


Defendants' Address

ASHLEY FURNITURE INDUSTRIES, LLC
c/o Registered Agent
CORPORATION SERVICE COMPANY
33 E MAIN ST, STE 610
MADISON, WI 53703-4655

RESIDENT HOME LLC
c/o Registered Agent
CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
WILMINGTON, DE 19808

ASHLEY GLOBAL RETAIL, LLC
c/o Registered Agent
CORPORATION SERVICE COMPANY
33 E MAIN ST, STE 610
MADISON, WI 53703-4655