IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAIME TODD, et al.,

                Plaintiffs,

v.

ASHLEY FURNITURE
INDUSTRIES, LLC, et al.,

                Defendants.

OPINION AND ORDER

24-cv-615-wmc

---

Plaintiff Jaime Todd sued defendant Ashley Furniture and other related companies on behalf of herself and others similarly situated, seeking to recover damages arising from defendants' sale of mattresses that contained fiberglass in the inner sock of the mattress as a fire-retardant. Following substantial discovery, plaintiffs' retention of multiple experts and two rounds of mediation, the parties have now reached a possible settlement, and before the court is the plaintiff's unopposed motion for preliminary approval of a class action settlement. (Dkt. #64.) The court will grant the motion and hold a fairness hearing on September 24, 2026, at 1:00 p.m.

## BACKGROUND

### A. Parties

Members of the putative class are about 6.2 million "individual end consumers who purchased an Affected Mattress in the United States from October 1, 2017 to June 30, 2024, which was designed, manufactured, produced, distributed, sold, or marketed by

defendants and contained fiberglass as a fire-retardant material in the inner sock of the mattress." (Dkt. #65-1, ¶¶ 1.8, 1.14.)

### B. Proposed Settlement

The parties agreed to a settlement, which provides that defendants will establish a so-called $12 million settlement fund. (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 4.) Of that amount, $9 million of pro-rata vouchers to defendants' businesses, rather than cash payouts, will be allocated to all participating class members who file claims. (*Id.*) That amount of vouchers are to be distributed to filing class members, regardless of the number of claimants. (*Id.* at 4-5.)

Plaintiffs' counsel proposes that the remaining $3 million to be awarded in cash for attorneys' fees and costs. (*Id.* at 5.) Any difference between the $3 million request and the court's award will also be distributed on a pro-rata basis to the participating class members. (Dkt. #65-1, ¶ 3.3.5.) In addition, counsel proposes that the longest-serving class representatives receive service awards of $5,000 each, while more recently-added representatives receive $1,315.79. (Dkt. #65-1, ¶ 3.5; Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 5.)

The settlement also appoints Epiq Class Action & Claims Solutions, Inc., as a third-party settlement administrator, who will be responsible for sending notices of the proposed settlement to the class members, calculating each class member's portion of the settlement fund, and distributing settlement payments. (Azari Decl. (Dkt. #69); Dkt. #65-1, ¶¶ 4.3-4.5.) Finally, defendants will pay all costs of settlement administration, which are currently estimated to be $380,000. (Dkt. #65-1, ¶ 3.6.)

OPINION

## I. Provisional Class Certification

The proposed class must satisfy Federal Rule of Civil Procedure 23. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015), with plaintiffs bearing the burden to show that a class should be certified. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). More specifically, the class must satisfy a two-part test that assesses: (1) whether the proposed class meets all four prerequisites of Rule 23(a) to establish the class; and (2) whether the class can be maintained under one of the subsections of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The court will address the Rule 23(a) prerequisites before considering Rule 23(b)(3).

### A. Rule 23(a) Prerequisites

The prerequisites under Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—determine whether a class may be established. Fed. R. Civ. P. 23(a). First, a class must be so numerous that it is reasonable to believe that joinder would be impracticable. *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). The court agrees that individually joining 6.2 million consumers would be impractical, so the class meets this prerequisite.

Second, a class must have questions of law or fact in common. Fed. R. Civ. P. 23(a)(2). Most importantly, the class must "assert a common injury that is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Lacy v. Cook*

3

*Cty., Ill.*, 897 F.3d 847, 865 (7th Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Here, plaintiffs identify three common questions for all members of the putative class: (1) whether defendants sold mattresses that did not provide sufficient warnings regarding the existence of fiberglass in the inner sock of those mattresses; (2) whether the mattresses were safe and fit for their intended purpose; and (3) whether defendants violated the law by failing to disclose to consumers the potential effect of fiberglass as a fire-retardant material in the inner sock of the mattresses. (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 13.)  Thus, commonality exists because these questions are central to the resolution of each plaintiff's claim and likely predominate over individual questions.  Moreover, the resolution of factual issues is likely to determine the validity of each claim "in one stroke," such that commonality is satisfied.  *Lacy*, 897 F.3d at 865.

The third requirement is that the proposed class representatives have claims typical of the proposed class members, and those claims arise from the same course of conduct giving rise to the claims of other class members.  Fed. R. Civ. P. 23(a)(3); *Lacy*, 897 F.3d at 866 (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).  Typicality ensures that a class representative litigating in her own self-interest will also advance the interests of the class.  *Id.* at 866 (citing *Oshana*, 472 F.3d at 514).  The court agrees that this requirement is satisfied because the proposed class representatives' claims "arise out of the same course of conduct by defendants—sale of mattresses containing fiberglass as a fire-retardant material—and rest on exactly the same legal theory" as the rest of the claims of the putative class—"whether defendants violated the law" by selling an unsafe product or

"failing to warn and disclose to consumers the nature and potential risk of using fiberglass as a fire-retardant material in certain mattresses." (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 13.) Therefore, the pursuit of the class representatives' claims also advances the interests of the class.

The fourth requirement is that the class representatives and class counsel fairly and adequately protect the interests of the proposed class. Fed. R. Civ. P. 23(a)(4). A class representative is not adequate if her interests conflict with those of other class members. *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). Here, the proposed class representatives are adequate to represent the class because their interests are the same, as all members seek compensation from defendants for the alleged sale of unsafe mattresses with inadequate warnings and disclosures. (Pantazis Decl. (dkt. #67) ¶ 11.) As for the adequacy of class counsel, plaintiffs' counsel and their firms appear to have significant experience litigating class and complex suits in federal courts across the country. (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 14.) Counsel is also sufficiently qualified and experienced to represent the proposed class. Overall, the court concludes that the proposed class meets all the Rule 23(a) prerequisites.

### B. Rule 23(b)(3) Requirements

The court now turns to the Rule 23(b)(3) requirements, superiority and predominance, which determine whether an established class may be maintained. Fed. R. Civ. P. 23(b). Under Rule 23(b)(3), certification requires the class have "questions of law or fact common to class members [that] predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy." *Id.* Relevant considerations include: class members' interest in individually litigating their claims; the extent and nature of class members' preexisting litigation regarding the controversy; the desirability of concentrating the litigation in a particular forum; and the difficulties of managing a class action. *Id.*

Predominance exists where a class representative's general allegations and common evidence establish a prima facie case for the class. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060 (7th Cir. 2016) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). The presence of individual questions does not prevent a common issue from predominating unless those individual questions overwhelm the questions common to the class. *Bell*, 800 F.3d at 378–79; *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). Here, the court agrees that "the overwhelming issues[,] . . . whether the mattresses were safe for their intended purpose, [] whether there were proper warning labels on the mattresses, . . . . and whether class members suffered damages," predominate over individual issues. (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 21.)

The final requirement is that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). This requirement is intended to ensure that a class action is the preferred method to "achieve economies of time, effort, and expense, and promote uniform decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). Here, after considering the significant expense of retaining experts to litigate individual cases,

compared to the somewhat lower value of each class members' individual damages, and the large size of the class, the court concludes that a single class-action proceeding is superior compared to likely duplicative, expensive, individual adjudication of each plaintiff's claims.

Accordingly, since Rule 23(a) and Rule 23(b)(3) are satisfied, the court provisionally certifies the class for settlement purposes only. The court also appoints plaintiffs Jaime Todd, Andrew Todd, G.T., Allen McClure, Angel McClure, Logan McClure, Jacob McClure, Killian McClure, Frances Burkowske, Malinda Gipson, Kevin Douthard, Diana Angus, Gabrielle Puyat, Brian Klowas, Lisa Jenkins, Judy Hughes, Heather Orgeron, Stacey Kemp, Eric Young, Paula Mills, Odessa Adams, Kimberly Adams, Erin Stavi, James Wilson, Victor Cavano, Conner Petropoulos, Julie Bartlett, Raven Fowlkes-Witten, Lena Bailey, Dylan Weber, Mercedes Rosato, Sandra Melendez, Joseph Ataganian, Geraldina Perez, Donald Watson, Shelley Hicks, John Palmer, Felicia Anderson, Alex Craig, Carrie Dadamo, Jessi Hardy, Lorenzo Diaz, Ashley Solis, Stephanie Jarvis Patterson, Melissa Anderson, and Nate Olsen as the class representatives for settlement purposes only.

The court also provisionally finds that the class representatives are similarly situated to absent class members, and therefore, typical of the class and adequate class representatives for settlement purposes only. Excluded from the class are: (1) the judges presiding over this litigation, and members of their immediate families; (2) defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the defendants or their parents have a controlling interest, and their current or former officers and directors; and (3) settlement class members who submit a valid request for exclusion

prior to the response deadline (as established within the settlement timeline set forth by the appropriate notice).

Finally, the court finds the following counsel are experienced and adequate counsel and appoints them as class counsel for settlement purposes only: D.G. Pantazis, Jr., Brian M. Clark, and Eric Sheffer from Wiggins Childs Pantazis Fisher Goldfarb LLC; Daniel B. Snyder, Gregory A. Cade, Kevin B. McKie, Gary Anderson, and Jordan Cade from Environmental Litigation Group, P.C.; Christopher Cueto from the Law Office of Christopher Cueto, Ltd.; and Lloyd M. Cueto from the Law Office of Lloyd M. Cueto, P.C.

## II. Preliminary Settlement Approval

The proposed settlement must satisfy the requirements of Federal Rule of Civil Procedure 23(e) and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712. Requests for attorneys' fees and incentive awards must be reasonable, and notice to the class must comply with the requirements of Rule 23(c)(2). The court addresses each aspect of the proposed settlement in turn.

### A. Rule 23(e)(2) Requirements

Settlement approval begins with a preliminary determination whether the proposed settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). A district court may approve a settlement that is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). As to procedural fairness, the court must consider whether class representatives and class counsel have adequately represented the class and the proposal was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A-B). Additional

considerations for court approval include: the strength of the plaintiffs' case compared to the settlement offer; the complexity, length, and expense of further litigation; any opposition to the settlement; the opinion of competent counsel; and the stage of the proceedings, particularly the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)). Following preliminary approval, the second step is a fairness hearing to give class members an opportunity to be heard. *Id*.

First, the court finds that the settlement was almost certainly reached through arm's-length negotiation, facilitated by experienced mediators, with class representatives and class counsel adequately representing the class up to this point. (Baldinger Decl. (dkt. #66) ¶¶ 1-11; Pantazis Decl. (dkt. # 67) ¶¶ 6-10.) Specifically, the parties represent that they have engaged in this dispute over a period of five years, culminating in mediations in fall 2025 and January 2026 that resulted in this settlement. (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 3-4.) The most recent mediator for this case also declares that: the parties submitted extensive, pre-mediation submissions; counsel for both sides "intensely contested the issues in dispute; and each party vigorously argued and defended their positions both in person and in their written submissions and supporting documentation," demonstrating competent, arms-length representation for the class. (Baldinger Decl. (dkt. #66) ¶¶ 4, 11.)

Having concluded that class representation and settlement negotiation have been fair and adequate, the court next considers the "primary concern" when evaluating settlement fairness: the strength of the plaintiffs' case as compared to the proposed

settlement. *Kaufman v. Am. Express Travel Related Servs.*, 877 F.3d 276, 284 (7th Cir. 2017). This factor does not instruct district courts to resolve the merits of the controversy, but instead to establish whether the settlement "reasonably reflects the relative merits of the case." *Id.* at 285. Here, while plaintiffs represent that they are confident in the strength of their claims, plaintiffs also represent that complicated issues remain, "center[ing] on developing multi-state consumer classes and product testing," involving "both parties' respective labs receiving and testing multiple samples of test and subject mattresses," and creating significant uncertainty as to the ultimate strength of their claims. (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 16.) Given the complex factual and legal issues and discovery that remain, this factor leans in favor of the proposed settlement at this stage.

The court remains somewhat skeptical, however, about the fairness of the proposed settlement in the form of vouchers to defendants' companies, especially relative to a cash payout to class counsel. Though plaintiffs present ample evidence of the sufficiency of Epiq's proposed notice program, they provide little to no evidence of the likely reach, effectiveness and value (in terms of cash equivalency) of providing vouchers to the class in place of a cash payout, especially where the voucher is limited to defendants' products, for a one-time purchase within a one-year time limit. For the court to assess the fairness of the settlement terms for this class and compare the proposed settlement to the strength of plaintiffs' claims, as well as class counsel's proposed compensation, the court will need more information about the likely usefulness and value of these vouchers for class members before the final fairness hearing.

Nonetheless, the complexity, length, and expense of further litigation also weigh in favor of settling. In-depth discovery would remain, including additional lab testing previously discussed and the planned depositions of thirty party witnesses and expert witnesses. (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 15-16.) Further litigation to resolve remaining issues obviously involves signficant expense to both parties, while the proposed settlement gives class members a proportion of their alleged damages (albeit in the form of a voucher) without the hardships of continuing litigation. Overall, this factor weighs in favor of the proposed settlement.

Regardless, the court cannot yet consider opposition to this settlement because class members have not yet been notified of the proposed settlement.[1] However, the proposed notice to class members plainly outlines how and why class members might want to object *or* be excluded from the settlement. (*See* Proposed Notices (dkt. # 65-1) Exs. A, B.) Because there is a clear process for class members to oppose the settlement, the court determines that this factor is neutral at this stage and will consider any opposition at the final fairness hearing.

Finally, for the aforementioned reasons, the stage of the litigation, the remaining discovery, and the opinion of competent counsel also favor preliminarily approving the settlement at this point. (Baldinger Decl. (dkt. #66) ¶ 11; Pantazis Decl. (dkt. #67) ¶¶ 6, 9-10.) Because the factors on balance show that the plaintiffs' proposal is fair, reasonable

---

[1] On occasion, and generally at final settlement approval, the Seventh Circuit has also considered the reaction of members of the class to the proposed settlement. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). Because class members have not yet been notified of the proposed settlement, considering class members' reaction at this stage would be premature.

11

and adequate, save perhaps for counsel's proposed compensation, the court will approve the preliminary class action settlement and authorize the mailing of the notices submitted to the court.  Consistent with the above, however, counsel is cautioned that the court plans to review thoroughly the reach, usefulness and value of a voucher settlement, as well as any objections to it, before and during the final fairness hearing.

### B.  Class Action Fairness Act, 28 U.S.C. § 1712

The court considers next preliminarily whether the proposed settlement should be considered a "coupon settlement" under CAFA, and whether it is fair, adequate, and reasonable if so. 28 U.S.C. § 1712; Fed. R. Civ. P. 23(e)(2).  The Seventh Circuit has explained one of CAFA's goals was to curb "abusive 'coupon settlements,' where defendants and class counsel agree to provide coupons of dubious value to class members but to pay class counsel with cash." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 705–06 (7th Cir. 2015) (citation omitted).  In assessing whether a settlement should be considered a coupon settlement under CAFA, the court must consider whether: "[1] the coupons have value only if a class member is willing to do business again with the defendant who has injured her in some way[; 2] the coupons have modest value compared to the new purchase for which they must be used[; 3] the coupons expire soon[; 4] are not transferable[; 5] and/or cannot be aggregated." *Id.* at 706.  Additionally, to assess the fairness of a coupon settlement, the court must look for "clear-sailing" clauses, in which defendants agree not to contest a fee request not exceeding a certain value, and "kicker" clauses, in which any reduction in requested fees reverts to defendants. *Id.* at 712 (explaining such clauses "seem

12

to benefit only class counsel and can be signs of a sell-out," and "weigh substantially against the fairness of a settlement").

Here, the proposed settlement agreement and notices establish that the vouchers will be valid for a period of one year and will be freely transferrable and stackable, which adequately address the third, fourth, and fifth factors. (Dkt. #65-1, ¶ 3.2; Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 26.)   Moreover, the settlement agreement provides that all $9 million of allocated funds will go towards the class in the form of a pro-rata voucher; any difference between the $3 million in attorneys' fees requested and the amount awarded will go to the class; and there is no "clear-sailing" provision, where defendants agree not to contest class counsels' request for fees.  Together, these provisions in the proposed settlement agreement obviously avoid several, potential indicators of an unfair coupon settlement.  *In re Sw. Airlines Voucher Litig.*, 799 F.3d at 705-706; 712; *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014).

Nonetheless, as already addressed, counsel has not yet represented to the court that the value of the voucher for each class member mitigates the concerns that "the coupons have value only if a class member is willing to do business again with the defendant who has injured her in some way[; and] the coupons have modest value compared to the new purchase for which they must be used." *In re Sw. Airlines Voucher Litig.*, 799 F.3d at 506. So far, plaintiffs explain only that the proposed vouchers "may be used at multiple stores[;] there is no minimum purchase amount[;] and defendants have represented that there are thousands of items available for sale across these multiple stores for less than the likely voucher value."  (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 26.)

Understandably, without knowing the actual opt-in rate and exact voucher value, the parties likely cannot make more specific representations at this time. But no matter its ultimate value, the voucher "must be used in a single transaction" and "no remaining value will be available" after the transaction, indicating that the voucher operates in effect as a coupon rather than a cash-replacement like a giftcard. (Dkt. #65-1, Ex. B, at 3); *Redman*, 768 F.3d 622, 635-636. Given the uncertainty of the voucher's value for each class member and its purchasing power in the stores in which it may be redeemed, as well as the lack of any guidance either from Epiq or other experts with experience in implementing a voucher program for a defendants' products only, especially for such a large class, the court reserves ruling on whether the proposed settlement is a coupon settlement under CAFA in advance of the final fairness hearing.

Even though the court reserves making a final determination that the proposed settlement is a coupon settlement under CAFA, however, the court finds plaintiffs have sufficiently demonstrated that the proposed voucher settlement is fair, reasonable, and adequate under § 1712(e) to warrant preliminary approval. This conclusion is supported by: the mitigating features of the voucher proposal discussed above; the 'injunctive' relief already negotiated by the parties; and the prospect of protracted, expensive litigation in the absence of a settlement. The court will enter another, written order after the final fairness hearing under § 1712(e), if the court concludes that the parties have reached a coupon settlement.[2]

---

[2] As class counsel discusses in its brief, a significant practical implication of the court finding that the parties have reached a coupon settlement is in the calculation of attorneys' fees. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d at 712. In its motion for fees, class counsel is encouraged to brief

## C. Request for Attorneys' Fees

As for the reasonableness of counsel's request for attorneys' fees, the parties propose that class counsel be awarded "one-quarter of the total settlement," which they purport to be equivalent to $3 million in cash (rather than in vouchers).  This would seem a reasonable request given the stage of this litigation, if the voucher were actually valued as a cash equivalent of $9 million, which it obviously is not to defendants, and likely is not to the class members either.

Attorneys' fees should resemble an *ex ante* bargain between the attorneys and the class.  *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011).  In determining appropriate attorneys' fees, courts have discretion to use either the lodestar method or percentage method, including in coupon settlements.  *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 713 (7th Cir. 2015) (lodestar method); *Redman v. RadioShack Corp.,* 768 F.3d 622, 634 (7th Cir. 2014) (percentage method).  The lodestar method roughly estimates "the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  The percentage method instead sets the attorneys' fees at a percentage of the recovered settlement fund, plus expenses and interest.  *See Redman*, 768 F.3d at 630 (to assess attorneys' fees in a coupon settlement, "the ratio that is relevant to assessing the reasonableness of the attorneys' fee that the

---

the possible impact of a § 1712 ruling on the fee award should the court find the parties have effectively reached a coupon settlement.

parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received.")

At this point, class counsel relies on the percentage method to demonstrate reasonableness. However, the court cannot determine the reasonableness of the fee request without counsel's full motion for attorneys' fees, including counsel's underlying hourly billing records and actual hourly and effective rates for those billed hourly and as a percent of recovery, as well as a discussion of how § 1712 may affect the court's analysis of the fee award, if the court finds that the parties have reached a coupon settlement. Accordingly, the court reserves ruling on the request for fees until it can consider a separate motion for fees, accompanying briefing, and underlying records, all preferably well in advance of the final fairness hearing.

### D. Incentive Award for Class Representatives

The class representatives state that they will seek a total service award of $85,000, with $5,000 allocated to each of the originally named plaintiffs, and $1,315.79 allocated to each of the recently named plaintiffs. (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 5.) An incentive award can be explained as a form of compensation for the extra work a named plaintiff performs in class action lawsuits. *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th Cir. 2000). The appropriate amount of an incentive award depends on "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Camp Drug Store, Inc. v. Cochran*

16

*Wholesale Pharm., Inc.*, 897 F.3d 825, 834 (7th Cir. 2018) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, plaintiffs' counsel represent that the incentive award is reasonable for the class representatives' "active[] participat[ion] in the case, including written discovery, document production, case development, depositions . . .[,] provid[ing] sample mattresses for inspection, provid[ing] data to our experts, and participat[ing] in the review and approval of the Settlement Agreement." (Pantazis Decl. (dkt. #67) ¶ 11.)  This court agrees that based on the named plaintiffs' represented assistance to counsel, which benefited the entire class, the respectively designated incentive awards may be reasonable, although the court will withhold final approval until the fairness hearing, which will hopefully include more detailed explanation of the need for, additional work done by, and role in settlement of the "recently named plaintiffs."

### E.  Proposed Notice

Finally, as noted above, the court authorizes class counsel to send the proposed notices to the class.  More specifically, notice to all members of a Rule 23(b)(3) certified class must include: (1) the nature of the action; (2) a definition of the certified class; (3) the class claims, issues, or defenses; (4) the option for class members to appear through counsel; (5) the option for class members to be excluded; (6) the time and manner to request exclusion; and (7) the effect of a class judgment on the members.  Fed. R. Civ. P. 23(c)(2).

The proposed email and long form notices provide class members with detailed information regarding the nature and claims of the action, a definition of the class, and

class members' option to appear through counsel. The notices also provide sufficient information about the availability and process for exclusion or objection, and the court will adopt the opt-out/exclusion process as set forth in plaintiffs' proposed notices. Therefore, the court authorizes sending the email and long form notices that plaintiffs submitted to the court, editing only to fill in missing dates, hyperlinks, and similar details as needed, and authorizes sending the forms to those class members who have previously opted out of receiving emails from defendants to ensure notice is provided.

ORDER

IT IS ORDERED that:

1) The unopposed motion for preliminary approval of class action settlement is GRANTED. (Dkt. #64.) Class representatives and class counsel are further appointed as designated above.

2) The proposed notices (Dkt. #65-1, Exs. 1A and 1B) are APPROVED and class counsel is AUTHORIZED to distribute them as provided in plaintiffs' submissions.

3) The court approves the settlement procedure and timeline as set forth in plaintiffs' brief. (Pls.' Br. in Supp. of Prelim. Settlement Approval (dkt. #65) 8-10.) For the benefit of the parties and the court, class counsel is ORDERED to submit an updated proposed schedule that includes the corresponding calendar dates, which the court will adopt in an order.

4) Unless coordinated otherwise with Judicial Assistant Melissa Hardin at 608-264-5087, the court will hold a final fairness hearing on September 24, 2026, at 1:00 p.m.

Entered this 19th day of March, 2026.

BY THE COURT:

_____/s/_____

WILLIAM M. CONLEY
District Judge

18