**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| JAIME TODD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ASHLEY FURNITURE INDUSTRIES, LLC, et al.,<br><br>Defendants. | Case No. 3:24-cv-00615-wmc<br><br>CLASS ACTION<br><br>Hon. William M. Conley |
| KYLE PAINTER,<br><br>Objector. | |

# OBJECTOR KYLE PAINTER'S OBJECTION

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... ii

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 2

I. Painter is a class member. ..... 2

II. There is no injunctive relief in the settlement. ..... 3

III. The "voucher" awards are potentially worth negative dollars. ..... 4

ARGUMENT ..... 6

I. This is a coupon-only settlement whose attorneys' fees are regulated by CAFA § 1712(a). ..... 6

A. The settlement's preliminary approval employed the wrong legal standing for determining if the vouchers are coupons. ..... 6

B. Under *Redman*, the "voucher" awards in this case are coupons and thus counsel's fee award is determined by CAFA § 1712(a). ..... 8

II. The Court should bifurcate the fee request from settlement approval and defer the fee award until after all voucher awards have expired. ..... 10

CONCLUSION ..... 12

## INTRODUCTION[1]

When this Court preliminarily approved the proposed class action settlement, it "reserve[d] making a final determination that the proposed settlement is a coupon settlement under CAFA," Dkt.70 at 14, because the Parties hadn't shown whether each class member's "voucher" "ha[s] value only if a class member is willing to do business again with Defendants" and whether it has "modest value compared to the new purchase for which [it's] … used." Dkt.70 at 13.

The Court's instinct was right, but its analysis was misguided by Plaintiffs' briefing, which turned inapposite dicta from *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015) (*Sw. Airlines*) into a legal test defining "coupon." As Judge Posner explained in *Redman v. Radioshack Corp.*, coupon settlements under the Class Action Fairness Act, 28 U.S.C. § 1712(a), are not "narrow[ly]" defined. 768 F.3d 622, 636 (7th Cir. 2014).

The statute encompasses "vouchers" like those in *Redman* and this case because "store credit [] is not as valuable … [as] cash," *id.* at 636-37, whether that credit "can be used either to buy entire items … or to obtain a discount on a pricier item." *Id.* at 636; *see also Drazen v. Pinto*, 106 F.4th 1302, 1344 (11th Cir. 2024) ("the certificate is a coupon whenever it is something that is not cash but can be exchanged for some or all of a product."). Even worse, the coupons in this case may have negative value, since they

---

[1] Objector Kyle Painter previously submitted a *pro se* objection to this Court, Dkt.75, but has since hired counsel for representation in this matter. *See* Ex. A. Painter maintains his objection but relies on this memorandum for argument, which supersedes the briefing he previously submitted to the Court.

waive class member claims while providing discounts that could have less monetary value than the regular, unstackable coupons freely provided on Defendants' websites. Between the vouchers' non-cash characteristics and Defendants' liberal discount use, the supposed $9,000,000 settlement fund is illusion; when the gains are realized, history and data demonstrate the true class relief is likely to be a substantially lower number.

Accordingly, Objector Kyle Painter objects to the current fee request of $3,000,000, Dkt.65 at 23, and requests that the Court instead award fees "based on the value to class members of the coupons that are redeemed." CAFA § 1712(a). Because the coupons here must be used within one year and spent at Defendants' digital stores, the Court should bifurcate the fee award from settlement approval, defer the award until the expiration of all coupons, and then determine a reasonable percentage of the class's total redemption for counsel's fee. This is consistent with CAFA § 1712's law and policy addressing the low redemption rates, perverse incentives, and poor economic value of coupon settlements.

## STATEMENT OF FACTS

Painter incorporates the statement of facts and litigation history as provided to the Court in Plaintiffs' brief for preliminary approval, Dkt.65 at 2-9. He also incorporates the other objections already submitted to the Court. Dkt.73 & Dkt.74. He writes here to address three material facts of concern to the Court.

### I. Painter is a class member.

Kyle Painter provides his residence and phone number as required by the settlement in his attached declaration. Ex. A ¶ 2. Painter was given email notice that he

is a member of the class and provided a unique ID of 67EE9FE347. Ex. A ¶ 3. This is because of his purchase of an affected mattress from one of defendants on November 28, 2019, in the amount of $664.41. Ex. A ¶ 3. Plaintiff has also filed a valid claim via the designated website for this litigation. Ex. A ¶ 6. Accordingly, Painter is a member of the class with standing to object. Dkt.65-1; Fed. R. Civ. P. 23(e)(5), (h)(2).

Painter brings this objection in good faith on behalf of the entire class to improve the relief currently agreed to by the Parties. Ex. A ¶ 4. He is represented by the Hamilton Lincoln Law Institute and its attorneys *pro bono* in this matter. Ex. A ¶ 5. Painter's attorneys intend to appear at the Final Approval Hearing, and Painter submits his attorney Ted Frank's declaration and its attached exhibits as relevant evidence for his Objection.[2] Painter has not objected to a class action settlement in the last five years.

## II. There is no injunctive relief in the settlement.[3]

In their motion for preliminary approval, Plaintiffs wrote "the injunctive relief sought by Plaintiffs … has been effectively achieved." Dkt.65 at 17. But the settlement

[2] Should new relevant evidence come to light before the Final Approval Hearing, Painter reserves the right to supplement the exhibits and Frank's declaration beforehand. Moreover, at this time Painter does not intend to call any witnesses at the Final Approval Hearing, but reserves the right to do so as this litigation develops.

[3] Even if Plaintiffs had obtained injunctive relief obligations in the settlement, their Complaint lacks any allegations demonstrating an intent to make future purchases from the Defendants, Dkt.56, which deprives them of Article III standing to win such relief. *See*, *e.g.*, *Kurtz v. Costco Wholesale Corp.*, 818 Fed. Appx. 57, 61 (2d Cir. 2020) (no allegation of future purchasing so no standing to seek injunctive relief); 1 MCLAUGHLIN ON CLASS ACTIONS § 4.28 (13th ed. 2016) ("[M]ost courts to address the question have ruled that a plaintiff who is a former customer who provides no concrete basis to conclude that he or she will purchase the product at issue in the future (so that they be subject to the challenged practice) lacks standing to pursue injunctive relief on behalf of a consumer class because the plaintiff is unlikely to suffer future harm."). And

does not mention any injunctive relief, Dkt.65-1, nor does it obligate Defendants in any way to "modif[y] the warnings on the mattresses pertaining to the use of fiberglass" or "stop[] manufacturing mattresses that use fiberglass as a fire-retardant material." Dkt.65 at 17. The settlement is what is relevant for the purposes of evaluating the relief provided to the class including for attorneys' fees. It is "the *incremental* benefits that matter," "not the total benefits." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002); *see also Remijas v. Neiman Marcus Group, LLC*, 341 F. Supp. 3d 823, 828-29 (N.D. Ill. 2018) ("non-monetary benefits, ... issued prior to the class action settlement ... cannot be fairly attributed to that settlement"); *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1090 (C.D. Ill. 2012) (voluntary remedial measures independent of the settlement "should not considered part of the benefit for forfeiting the right to sue"); *cf. Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1080 (9th Cir. 2017) (settlement's injunctive relief is "of no real value" where it did not "obligate [defendant] to do anything it was not already doing"). Because there is no injunctive relief in the settlement, only the "voucher" awards are relevant for determining attorneys' fees.

## III. The "voucher" awards are potentially worth negative dollars to many class members.

The class action awards are redeemable at four of Defendants' websites, but these websites regularly provide automatic discounts to customers simply for going to the site or using publicly available promotion or referral codes. Frank Decl. ¶¶ 4-9. Intentional and consistent use of discounts and coupons appear to be part of

without standing to seek a form of injunctive relief, it cannot be valued as part of the settlement package. *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023).

Defendants' business strategy. Frank Decl. ¶¶ 4-9; *see also Redman*, 768 F.3d at 631 (quoting the Thom Reese article "How to Use Coupons to Promote Your Business"). These online discounts are often substantial in size, and they appear to be un-stackable, meaning they must be used exclusively and not with other discounts. Frank Decl. ¶¶ 4-17. Sometimes the terms and conditions of Defendants' online coupons expressly preclude use of additional discounts once one is applied. Frank Decl. ¶¶ 14-15. And some of Defendants' websites simply bar customers from using more than one coupon or discount at checkout. Frank Decl. ¶¶ 13, 16; *see generally* Howard Erichson, *Aggregation as Disempowerment,* 92 NOTRE DAME L. REV. 859, 879 (2016) (listing non-stackability as a recurring red flag of coupon settlements).

Defendants' prolific and universal discount promotions potentially make the settlement vouchers a negative cost on class members. Depending on the listed price of the item(s) a class member buys from Defendants' websites, any available discount already given to customers (including the shopping class member) may be *better* than using the fixed-dollar award from this litigation.[4] *See also Galloway v. Kan. City Landsmen, LLC*, 2012 WL 4862833, 2012 U.S. Dist. LEXIS 147148, *16 n.2 (W.D. Mo. 2012) (rejecting a settlement where "a quick search of the internet found comparable coupons" to those awarded).

Because the online discounts do not appear to be stackable with any other discounts, the class member could choose to use the normal discount in a future

[4] At this time, the value of the vouchers is unknown because the $9,000,000 fund will be split based on the number of valid claims.

transaction instead of the voucher—but his claims are still extinguished. And that result is a negative cost to the class member, not a benefit.[5]

## ARGUMENT

### I. This is a coupon-only settlement whose attorneys' fees are regulated by CAFA § 1712(a).

#### A. The settlement's preliminary approval employed the wrong legal standing for determining if the vouchers are coupons.

The preliminary approval analysis as to whether the "vouchers" in this case were coupons relied on *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 705-06 (7th Cir. 2015). Dkt.70 at 12. It "considered whether: 1] the coupons have value only if a class member is willing to do business again with the defendant … [; 2] the coupons have modest value compared to the new purchase … [; 3] the coupons expire soon [; 4] are not transferable [; 5] and/or cannot be aggregated." Dkt.70 at 12. But this is the wrong standard; in fact, it's not a legal test at all. That language from *Sw. Airlines* is commentary describing when "the potential for abuse" in coupon settlements "is greatest." *Id.* at 706. It comes from Judge Hamilton's preliminary discussion of *why* Congress passed the Class Action Fairness Test. These factors go to whether the settlement vouchers are "better [or worse] coupons under CAFA—*i.e.*, more likely to provide some amount of actual value to class members—rather than [whether they are] coupons at all." *Cannon v. Ashburn Corp.*, 2018 WL 1806046, 2018 U.S. Dist. LEXIS 64044, *25 (D.N.J. Apr. 17, 2018).

---

[5] The Parties could agree before the settlement hearing that awards in this case are stackable with Defendants' other coupons and discounts, which would moot the issue of negative class awards.

The actual coupon determination in *In re Sw. Airlines Voucher Litig.* disposed of the analysis in one paragraph, discussed none of the above factors, and simply pointed to *Redman*. *Id.* "[T]he ordinary meaning of "coupon" encompasses "any type of award that is not cash or a product itself, but that class members can redeem to obtain products or services or to help make future purchases." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 613 (9th Cir. 2021) (Miller J., concurring) (internal quotation omitted); *accord Moses v. N.Y. Times Co.*, 79 F.4th 235, 247 (2d Cir. 2023) (offering a similar plain meaning). "[C]oupon" is "interchangeable with voucher." *Mckinney-Drobnis*, 16 F.4th at 613 (quoting *Redman*, 768 F.3d at 636).

Plaintiffs' unopposed briefing for preliminary approval erred in introducing the *Sw. Airlines* discussion as a "roadmap" for analysis of fee jurisdiction under CAFA § 1712 and then proceeded to analyze the voucher awards using this standard. Dkt.65 at 25-26. But a coupon can have *none* of the above factors and still fall under CAFA § 1712. For example, imagine a class action against a large pharmacy chain for mispricing $30 drugs, which as a remedy the chain provides stackable and transferrable $10 discount codes usable at *any* pharmacy (including known competitors) for the drugs at issue, expiring in five years. These discount codes have *none* of the issues described above but would still qualify as a coupon under *Redman* because they aren't cash or cash-like, which is the Seventh Circuit's standard for evaluating CAFA § 1712's application to a settlement. Better coupons are still coupons; "to the extent the settling parties are correct that class members have a strong interest in receiving these coupons, the coupon redemption rate should reflect that interest." *In re EasySaver Rewards Litig.*, 906 F.3d 747, 756 n.6 (9th Cir. 2018).

### B. Under *Redman*, the "voucher" awards in this case are coupons and thus counsel's fee award is determined by CAFA § 1712(a).

*Redman* offers the appropriate guidance for whether the vouchers are a coupon: In the Seventh Circuit, courts simply evaluate the extent the award is "as valuable … [as] cash." *Redman*, 768 F.3d at 636-37; *see also Drazen*, 106 F.4th at 1344 ("the certificate is a coupon whenever it is something that is not cash but can be exchanged for some or all of a product."). For the purposes of attorneys' fees, this is to ensure counsel is paid not "on a coupon's nominal face value [but] instead [] its true economic value." *Id.* at 636. CAFA § 1712 is not a "narrow" statute, and the law's legislative history looks at "vouchers" interchangeably with the coupon settlements targeted and regulated by the law. *Id.*

In *Redman*, the "vouchers" at issue—the settlement there used the same language—provided "each class member who responded … a $10 coupon that it could use at any RadioShack store," to purchase either "an item costing $10 or less (but he would receive no change if the item cost less than $10), or as part payment for an item costing more." *Id.* at 628. Class members could stack up to three coupons and transfer/sell them, and the coupons required use within six months of issuance. *Id.* This resembles the "vouchers" in this settlement, but plaintiffs there argued that they weren't "coupons" because class members could buy an entire item(s) at RadioShack with them. *Id.* at 636.

The Seventh Circuit found this was a coupon settlement and CAFA § 1712 applied anyway, since the mechanics of these vouchers distinguished them from actual cash. *Id.* at 625-37. Plaintiffs here advance different arguments from *Redman*—tethered to irrelevant dicta in *Sw. Airlines*—but they suffer from the same fatal flaw. The vouchers are simply not cash-like: they expire, can only be spent in limited places, require substantial administrative cost to obtain and use, would sell for less than their

face value, and we cannot determine the net economic value from the awards until after they expire. They are coupons.

Because there is no injunctive relief in the settlement, *supra*, and the coupons are the only compensatory award, attorneys' fees *must* be calculated using CAFA § 1712(a). This statute holds that attorneys' fees for coupon cases like this be "attributable to the award of the coupons … based on the value to class members of the coupons that are *redeemed*." CAFA § 1712(a) (emphasis added). The Seventh Circuit has diverged on the use of lodestar in coupon-only settlements like this, *compare Redman*, 768 F.3d at 634-35 (lodestar "wouldn't make much difference" because "hours [alone] can't be given controlling weight") *with Sw. Airlines*, 799 F.3d at 710 (permitting district court to use lodestar for coupon case), and the Ninth Circuit prohibits using lodestar. *E.g., In re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1183-84 (9th Cir. 2013).

But class counsel made this easy, by omitting any lodestar justification for fees in its preliminary approval motion and asking for a 25% fee award. *See* Dkt.65. By omitting any lodestar detail, they have "handicapped"[6] class members and the Court, and Plaintiffs have forfeited any possible § 1712(b) lodestar basis for their fee request. That said, the reason for this omission is almost certainly the fact that a realistic lodestar accounting would not get class counsel anywhere near the $3 million that they seek when this case settled on Docket Entry 60 before a class certification motion was even filed. Objector agrees that the Court should use the percentage method to calculate counsel's fees, but it must first determine the value of the redeemed coupons rather than the total common fund.

[6] *Redman*, 768 F.3d at 638.

## II. The Court should bifurcate the fee request from settlement approval and defer the fee award until after all voucher awards have expired.

*Redman* gives the district courts discretion into how they determine "the value to class members of the coupons that are redeemed" under CAFA § 1712(a). 768 F.3d at 633. "There is no need for a rigid rule": Based on the circumstances of a case, courts may elect to use an expert witness to project redemption value, wait to ascertain a true redemption value, make interspersed fee awards over certain time intervals, or some other legally justifiable approach. *Id.* Here, the vouchers' one-year expiration date gives the Court certainty about when redemption value is obtainable, and this timeframe is succinct. Thus the Court can best honor CAFA § 1712(a) by simply bifurcating settlement approval and the fee award, and then waiting a year to determine a true redemption value with which to award counsel's fees. *E.g.*, *Rael v. Children's Place, Inc.*, 2021 U.S. Dist. LEXIS 63117, *55-56 (S.D. Cal. Mar. 31, 2021).

Waiting to award fees in coupon settlements is sound law and good policy. First, precedent shows consumer coupon redemption rates will likely be in the low single digits. *See, e.g.*, *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 971 (8th Cir. 2016) (0.045% of distributed certificates were redeemed); Declaration of David Tjen, *Knapp v. Art.com*, No. 3:16-cv-00768-WHO, Dkt. 84-7 (N.D. Cal. Aug. 29, 2018) (declaring that $142,940 worth of vouchers were redeemed; that amounts to only 0.71% of the $20 million face value distributed); *Davis v. Cole Haan, Inc.*, 2015 WL 7015328 (N.D. Cal. 2015) (2.3% of distributed vouchers were redeemed); James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. L. ETHICS 1443, 1445, 1448 (2005) (typically "redemption rates are tiny," "mirror[ing] the annual corporate issued promotional coupon redemption rates of 1-3%"); Steven B. Hantler & Robert

E. Norton, *Coupon Settlements: The Emperor's Clothes of Class Actions*, 18 GEO. J. L. ETHICS 1343, 1347 (2005) (noting one settlement where only 2 of more than 96,000 coupons were redeemed). "A redemption rate of 3% would be largely in line with typical redemption rates in email coupon campaigns." *Swinton v. Squaretrade, Inc.*, 454 F. Supp. 3d 848, 866 (S.D. Iowa 2020) (citing surveys). Even in *Rougvie v. Ascena Retail Grp., Inc.*, where the settling parties spent more than $12 million on administration costs to pre-print and mail visually appealing hard copy coupons to class members, the redemption rate was still just 7.5%. 2019 U.S. Dist. LEXIS 28229, at *11 (E.D. Pa. Feb. 21, 2019) (noting that $30.25 million in coupon value was redeemed from a hypothetical maximum of $402 million). These low redemption rates suggest the value delivered to the class will be far lower than the $9,000,000 top line trumpeted by Plaintiffs.

Second, by only paying attorneys based on relief actually delivered, CAFA § 1712 incentivizes counsel to negotiate the best relief possible. "Class actions are rife with potential conflicts of interest between class counsel and class members," *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013), especially in coupon settlements where "defendants and class counsel agree to provide coupons of dubious value to class members but to pay class counsel with cash." *Sw. Airlines*, 799 F.3d at 705-06. As *Sw. Airlines* points out, certain features in coupon settlements—modest value, requiring repeat business with the injurious defendant, short expiries, etc.—indicate where the "potential for abuse" of these conflicts is "greatest." *Id.* at 706. And while some of these worrisome features may be present in this settlement already, Dkt.70 at 13-14, waiting for award redemption data bulwarks against a quick-and-easy paycheck while promoting fair relief to the class. Indeed, keeping counsel invested in the administration

can itself spur an unusually robust redemption rate. *See* Joint Status Conference Report, *Rael,* No. 16-cv-00370, Dkt. 162 (S.D. Cal. Dec. 18, 2023) (reporting redemptions of $587,036 of $5.4 (~12%) in distributed coupon value via $6 off and 25% off coupons when followed the CAFA fee deferral process).

Finally, without data on redemption rate, the Parties cannot substantiate the vouchers' aggregate value. Getting this data is not difficult: the wait is short, and the vouchers can only be spent at Defendants' digital businesses, so the tracking of coupon use is easily automated. It is almost certain that the nine million dollar topline figure trumpeted in the settlement will not actually be redeemed at Defendants' four websites. Many people will forget to spend the vouchers at all, or choose not to use them—especially if the sites only allow one discount at a time and regular site discounts are more optimal than these vouchers' absolute value. *Supra*. Others may spend some of the voucher but not all of it, depending on the prices of goods available on the store. Regardless, "the chipping away at the nominal value of the settlement by the numerous restrictions imposed" means its realized economic value will be substantially lower. *Redman*, 768 F.3d at 631. And this is what matters for class counsel's fee award.

Accordingly, bifurcation of the settlement and fee request is appropriate here and the Court should defer fees until all vouchers have expired and a realized economic value of the settlement can be calculated.

## CONCLUSION

The Court should find that the voucher award here make this a coupon settlement and thus CAFA § 1712(a) applies for attorneys' fees. Because fees can be

objectively determined in relatively short order after the vouchers expire, the Court should defer the fee award so that counsel is only paid based on the actual economic value delivered to the class from the settlement.

Dated: July 17, 2026

/s/Theodore H. Frank
Theodore H. Frank
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Email: ted.frank@hlli.org

*Attorney for Objector Painter*

**Certificate of Service**

The undersigned certifies he electronically filed the foregoing via the ECF system for the Western District of Wisconsin, thus effecting service on all attorneys registered for electronic filing.

Dated: July 17, 2026

/s/ Theodore H. Frank