# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| Jamie Todd, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No.: 3:24-cv-615-wmc |
| | ) | |
| Ashley Furniture Industries, LLC, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**DECLARATION OF D.G. PANTAZIS, JR.**

My name is D.G. Pantazis, Jr. and I declare under penalty of perjury that the following is true and correct and based on my personal knowledge.

1. I am over the age of nineteen years old.

2. I am a member of the law firm Wiggins, Childs, Pantazis, Fisher, and Goldfarb ("Wiggins Childs"). I was admitted to practice in the State of Alabama in 2010. I have litigated cases in state and federal courts in Alabama, Georgia, Tennessee, Florida, New York, New Jersey, California, Illinois, Louisiana, Pennsylvania, Ohio, Kentucky, New Mexico, Arizona, and Washington D.C. I have practiced law with the Wiggins Childs firm since 2010 and have been a member/partner since 2017. I oversee and supervise other attorneys and serve in various leadership roles both at my firm, and in the local and state bar.

3. Since 2010, I have been engaged in a complex litigation practice throughout the United States. The vast majority of my practice involves class action, collective action, and MDL litigation. I have litigated consumer, environmental, regulatory, contractual, pharmaceutical, and product liability cases in state and federal courts on a routine basis. I also represent victims of terror in obtaining and collecting on judgments against various bad actors.

4. I have been appointed class counsel, lead counsel, and/or co-lead counsel in a large number of class and collective cases, as well as complex and multi-Plaintiff individual cases.

5. I am knowledgeable as to the amount and type of work necessary to prosecute individual and class cases on behalf of Plaintiffs and the special expertise demanded by such work in order to be successful.

6. My firm, Wiggins Childs, is a major Plaintiffs' litigation firm with offices in Birmingham, AL, DeLand, FL, and Washington D.C. The firm has been recognized by U.S. News and World Reports as a first tier "Best Law Firm" and as "Best Lawyers in America". I have attached a firm resume to my declaration as **Attachment A**.

7. Brian Clark and Eric Sheffer are lawyers from my firm that also provided significant work in this litigation and were appointed Class Counsel in the Court's Preliminary Approval Order.

8. Brian Clark is a member of Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC ("Wiggins Childs") and has practiced there since 1994. He was admitted to the bar in Alabama in 1991 and licensed in the United States District Court for the Northern, Middle, and Southern Districts of Alabama, as well as the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. A significant portion of his practice at the Wiggins Childs firm has been devoted to complex litigation, including class actions and collective actions. He has litigated cases in the MDL setting, and all manner of cases representing consumers and plaintiffs in a class or collective action setting, including class claims under the various states' Deceptive Trade Practices Acts, as is the case here.

9. Eric Sheffer has practiced at Wiggins Childs since 2018 and is currently an associate. He was admitted to the Alabama bar in 2018. He is licensed in the Northern, Middle,

and Southern Districts of Alabama. His practice includes civil rights, business litigation, employment litigation, product defects, wage and hour, and various complex litigation matters. Eric has extensive knowledge of electronically stored information ("ESI") and data systems in class actions, as well as trial technology presentation. He has litigated cases in Federal Courts throughout the country and has experience litigating Deceptive Trade Practices Act lawsuits, such as this one.

10. Tammy Todd is my legal assistant, and she also performed significant work on this litigation. She has been a legal assistant since 1981 and has worked at Wiggins Childs since 1994. For most of her career, she has been assigned to work on major complex litigation cases throughout the United States, including, but not limited to class action, collective action, and MDL litigation. She has served as the discovery coordinator in a major MDL action and has served as the legal assistant responsible for preparing and submitting monthly time reports for our Firm's litigation team in major MDL and class cases. She also serves as the sole legal assistant to the consortium of attorneys who represent victims of terror in obtaining and collecting on judgments against various bad actors.

11. In total, my firm spent 1,854.15 hours litigating this case out of the 6,051.79 total hours in Class Counsel lodestar, exclusive of work performed after filing for preliminary approval. I have presented a breakdown of the hours spent by timekeeper and category as **Attachment B** to my declaration.

12. The following is a detailed explanation of the number of hours spent on each aspect of this case by Class Counsel:

a. Intake, Review and Initial Case Strategy (47.4 hours): To begin, Class Counsel spent significant time working with clients nationwide to evaluate the claims and understand the breadth of the issues at hand. This category reflects the earliest work on the case.

This work includes contact and communication with clients, correspondence among counsel, evaluation of the claims with consultants, and development of case strategy prior to filing suit. This category does not include mediation and document drafting.

b. Pleadings and Complaint Drafting (174.7 hours): Class Counsel drafted and revised original and amended complaints, added additional plaintiffs, updated factual findings, coordinated edits among co-counsel, and prepared accompanying motions for filing with the Court, including but not limited to responses to motions to dismiss, motions to compel, and their own motion for preliminary approval. This category also includes preliminary drafts of the class certification briefings that were not ultimately filed.

c. Legal Research (141.2 hours): Class Counsel researched applicable law and the science underlying Plaintiffs' core factual allegations, including the presence and behavior of fiberglass in the mattresses at issue. This research informed the drafting of the complaint (and subsequent amendment), discovery efforts, mediation strategies, class certification presentation, expert report creation, and supported the legal and factual theories advanced throughout the litigation.

d. Discovery, ESI, and Document Review (513.65 hours): This category encompasses the collection, review, and organization of electronically sored information and client documents. It includes the intake files for new clients, mattress purchase and damages documentation, medical records, and accompanying media for all clients. It also includes the maintenance and review of Defendants' records, including financial modeling, spreadsheets, textile manufacturing data, sales data, and labeling and marketing information. This work greatly guided the overall strategy of the case, as well as the ultimate evaluation of the lawsuit's merits.

e. Discovery, Responses, and Production (477.23 hours): Class Counsel prepared, revised, and finalized responses for almost all of the named Plaintiffs. This work also included coordinating document production, travel nationwide to procure documents and mattress samples, and work with IT and other experts to make sure the production was performed properly and produced in an organized manner.

f. Class Representative Research and Vetting (259.8 hours): This category reflects the work performed to identify, vet, and organize information related to class representatives who could best provide representation for each state subclass. This was a nationwide review effort involving interviews, document collection, and analysis of

corresponding state consumer protection laws. It included the maintenance of master contact and mattress make/model spreadsheets, review of documentation and preparation of materials to support each client's claims.

g. Expert Witness Coordination (647.7 hours): Class Counsel worked with retained experts to manage document production for expert review, organize materials for review, prepare disclosures, and model case presentation strategies. This category also includes sample testing, protocol development, and class certification analysis. It also included ultimate case evaluation that was crucial to developing and analyzing the merits of the case.

h. Expert Report Review and Drafting (241.1 hours): This category reflects the substantive review, discussions, and finalization of five expert reports and their supporting exhibits and appendices. It was crucial that Class Counsel and their experts were aligned in making their expert disclosures and reports in an effort to prepare for Class Certification and ultimately Summary Judgment and trial.

i. Mediation Preparation (139.7 hours): Class Counsel prepared for mediation by drafting and revising multiple pre-mediation statements, compiling and presenting supporting exhibits, and organizing materials and case documents to support demands for class wide resolution.

j. Mediation (316.1 hours): This category covers the mediation proceedings themselves, travel and appearances at the mediation session, follow-up conferences with the mediator and opposing counsel, negotiation and development of term sheets, and related presentations and filings with the Court memorializing the parties' agreement in principle.

k. Settlement Negotiation and Agreement (300.93 hours): Class Counsel drafted and redlined the settlement agreement and its exhibits, coordinated presentation and materials with the settlement administrator, prepared the motion for preliminary approval along with supporting documents and declarations, and obtained signatures from all class representatives. This category only captures time spent prior to Class Counsel's motion for preliminary approval.

l. Depositions (298.6 hours): This category reflects preparation for and coordination of party and class representative depositions, and expert depositions. This includes the scheduling through the court reporting service, preparing deposition and deposition-preparation

schedules, coordinating attorney coverage for each deposition, compiling document and reviewing with the clients, and meetings with each client to prepare for their depositions.

m. Court Filings and Procedural motions (502.8 hours): Class Counsel and their staff prepared, finalized, and e-filed numerous procedural submissions with the Court, including motions for pro hac vice, joint motions to continue briefing and case schedule, responses to Defendants' motions and motions to amend the complaint. This work was in addition to the Pleadings and Complaint drafting, and the legal research previously identified.

n. Client Communication (140.7 hours): This category reflects additional direct communication with the Plaintiff and class members not previously identified. It includes status updates, letters, responses to individual client inquiries, settlement and case development discussions, and correspondence regarding availability and mattress testing.

o. Internal Team Meetings, Calls, and Case Development (1,409.58 hours): This category reflects the substantial coordination required across three law firms to prosecute a nationwide consumer litigation affecting over 6 million people. Over the life of the litigation, this work included internal strategy conferences, case status calls, day-to-day communication necessary to move the case forward, and routine discussions regarding strategy, settlement, motions, discovery, clients, legal research, case value, experts, and firm by firm delegation and coordination.

p. Opposing Counsel Communication (185.8 hours): This category covers direct correspondence and conferences with defense counsel, including negotiation of scheduling matters, discussing of redlines, and negotiation and resolution of discovery and production disputes without Court intervention where possible.

q. Travel (67.8 hours): This category reflects travel time by attorneys and staff that was associated with the litigation, including travel to and from mediation, travel undertaken to meet with class representatives and experts and home visits and document collection work.

r. Administrative (187.0 hours): This category encompasses basic case administration work that does not fall neatly within the more substantive categories above. It includes docket monitoring, file organization, invoice process, and maintenance of internal tracking

spreadsheets to manage case workflow, case documents, and client information.

13. Class Counsel incurred $139,073.82 in costs in their prosecution of this case. Class Counsel spent this money with no promise of repayment, and solely in an effort to prepare the case for class certification, summary judgment, and ultimately trial. The expenses incurred were reasonable and necessary to prosecute and resolve the nationwide class action lawsuit. The list of itemized expenses is attached hereto as **Attachment C**.

14. Class Counsel is still accruing additional costs and lodestar; Class Counsel estimates they will incur over $46,000 in additional expenses and that they have spent an additional 500 hours working on the case to date.

15. Were my firm to bill a client hourly for the type of work performed in this case, our billing structure would be as follows: Senior Partners (15+ years) at $1,200/hour, Junior Partners (8-14 years) at $1,000/hour, Senior Associates (4-7 years) at $800/hour, Junior Associates (1-3 years) at $600/hour, and Paralegals at $250/hour.

16. Realistically, our clients can only afford contingency fee contracts to pursue their claims, so my firm typically requires a 33% to 50% contingency contract to pursue complex litigation class actions. This is similar to what was done with our clients in this case.

17. Class Counsel in this case has included hourly rates of $925/hr for partners, $450/hr for associates, and $150/hr for paralegals to create the lodestar.

18. These rates are similar to the rates recently awarded lead counsel in this case from our firm in a similar, complex antitrust matter pending in the Northern District of Alabama. *See In Re: Blue Cross Blue Shield Antitrust Litigation* (MDL No.: 2406). These rates are consistent with local rates afforded in this district and beyond in the Seventh Circuit. However, the blended and effective hourly rates are much lower than that included in the lodestar.

19. I have reviewed all contemporaneously kept billing records as well as the accrued costs and submit these amounts to be reasonable given the nature and complexity of the work as well as its importance to the clients, the class, and the outcome of this case.

20. Class Counsel's total lodestar is $4,254,086.75. This lodestar and the hourly rates are consistent with other litigation in this District and Circuit as outlined in our brief.

21. The Settlement provides real value and relief to the Class in the allocated vouchers. The litigation also changed the business practices of the Defendants in that they no longer sell mattresses with fiberglass fire barriers and have added disclaimers to labels and their website regarding the potential effects of fiberglass in mattresses.

22. The work performed by Class Counsel was reasonable and necessary to reach this result and without the time and effort spent by Class Counsel, to the exclusion of other valuable work, the Class would not have reached this fair, reasonable, and adequate Settlement.

23. Thus, Class Counsel's request for fees and expenses is reasonable.

24. Class Counsel has provided detailed descriptions of the lodestar and expenses in this case and offered to submit itemized time entries to the Court *in camera* to preserve privileged work-product and communications. It should be noted that Class Counsel originally presented the lodestar as over $4.1 million; however, after accumulating all three firm's time entries and some trailing time from the presentation of the preliminary approval documentation, the lodestar surpasses $4.2 million.

25. This was a complex and difficult nationwide class action that required multiple firms, lawyers, and staff to litigate. In addition to typical discovery processes of a case this large and complex, I, along with other Class Counsel, evaluated claims on behalf of over 4,000 clients,

prepared five (5) lengthy expert reports, and included over 40 Named Plaintiffs to properly represent each state consumer class.

26. The Class Representatives have expended significant time, energy, and resources in the prosecution of this case. Both long serving and more recently added plaintiffs provided personal records and testimony related to healthcare and also participated in inspections of their homes and mattresses; they reviewed pleadings, participated in case analysis, answered discovery and produced documents, prepared for depositions, and reviewed and approved the Settlement Agreement. Without their efforts, the Class would receive nothing. Their sacrifice and effort warrant the requested incentive awards.

27. Based on the foregoing, Class Counsel seeks combined fees and expenses from the Settlement Fund in the total amount of $3,000,000.00 and for the entry of Case Contribution awards to each of the Class Representatives as delineated in the application to the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 18th day of August, 2026.

*/s/ D. G. Pantazis, Jr.*
D. G. Pantazis, Jr.